# CONNECTICUT *v.* BARRETT

No. 85–899.   Argued December 9, 1986—Decided January 27, 1987

524

REHNQUIST, C. J., delivered the opinion of the Court, in which WHITE, BLACKMUN, POWELL, O'CONNOR, and SCALIA, JJ., joined. BRENNAN, J., filed an opinion concurring in the judgment, *post,* ·p. 530. STEVENS, J., filed a dissenting opinion, in which MARSHALL, J., joined, *post,* p. 536.

*Julia DiCocco Dewey,* Assistant State's Attorney of Connecticut, argued the cause and filed a brief for petitioner.

*Charles A. Rothfeld* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Solicitor General Fried, Assistant Attorney General Trott,* and *Deputy Solicitor General Bryson.*

*Robert L. Genuario* argued the cause for respondent. With him on the brief was *John F. Kavanewsky, Jr.*\*

---

\*Briefs of *amici curiae* urging reversal were filed for the State of Alaska et al. by *David Crump* and by the Attorneys General for their respective States as follows: *Harold M. Brown* of Alaska, *Robert K. Corbin* of Arizona, *John Steven Clark* of Arkansas, *John K. Van de Kamp* of California, *Duane Woodard* of Colorado, *James T. Jones* of Idaho, *Linley E. Pearson* of Indiana, *David L. Armstrong* of Kentucky, *William J. Guste, Jr.,* of Louisiana, *Frank J. Kelley* of Michigan, *Hubert H. Humphrey III* of Minnesota, *Edwin L. Pittman* of Mississippi, *William L. Webster* of Missouri, *Lacy H. Thornburg* of North Carolina, *LeRoy S. Zimmerman* of Pennsylvania, *T. Travis Medlock* of South Carolina, *Mark V. Meierhenry* of South Dakota, *Mary Sue Terry* of Virginia, *Kenneth O. Eikenberry* of Washington, and *Bronson C. La Follette* of Wisconsin; and for the National District Attorneys Association by *Robert S. Marsel, Jack E. Yelverton,* and *James P. Manak.*

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

Respondent William Barrett was convicted after a jury trial of sexual assault, unlawful restraint, and possession of a controlled substance. The Connecticut Supreme Court reversed the convictions. It held that incriminating statements made by Barrett should have been suppressed under our decision in *Edwards* v. *Arizona,* 451 U. S. 477 (1981), because Barrett, though stating his willingness to speak to police, had indicated that he would not make a written statement outside the presence of counsel. 197 Conn. 50, 495 A. 2d 1044 (1985). We granted certiorari to consider the federal constitutional issues presented by this holding. 476 U. S. 1114 (1986). We reverse.

In the early morning of October 24, 1980, Barrett was transported from New Haven, Connecticut, to Wallingford, where he was a suspect in a sexual assault that had occurred the previous evening. Upon arrival at the Wallingford police station, Officer Peter Cameron advised Barrett of his rights, and Barrett signed and dated an acknowledgment that he had received the warnings required by *Miranda* v. *Arizona,* 384 U. S. 436 (1966). Barrett stated that "he would not give the police any written statements but he had no problem in talking about the incident." App. 12A.

Approximately 30 minutes later, Barrett was questioned by Officer Cameron and Officer John Genovese. Before this questioning, he was again advised of his *Miranda* rights and signed a card acknowledging that he had been read the rights. Respondent stated that he understood his rights, and told the officers that he would not give a written statement unless his attorney was present but had "no problem" talking about the incident. *Id.,* at 21A. Barrett then gave an oral statement admitting his involvement in the sexual assault.

After discovering that a tape recorder used to preserve the statement had malfunctioned, the police conducted a second

interview. For the third time, Barrett was advised of his *Miranda* rights by the Wallingford police, and once again stated that "he was willing to talk about [the incident] verbally but he did not want to put anything in writing until his attorney came." *Id.*, at 44A. He then repeated to the police his confession regarding the previous evening's events.

When the officers discovered that their tape recorder had again failed to record the statement, Officer Cameron reduced to writing his recollection of respondent's statement.

The trial court, after a suppression hearing, held that the confession was admissible. It found that respondent not only indicated that he understood the warnings, but also "offered the statements that he did not need anything explained to him because he understood. So it was not merely a passive acquiescence . . . ." *Id.*, at 70A. Barrett's decision to make no written statement without his attorney "indicate[d] to the Court that he certainly understood from having his rights read to him that . . . he was under no obligation to give any statement." *Ibid.* The court held that Barrett had voluntarily waived his right to counsel and thus allowed testimony at trial as to the content of Barrett's statement. Barrett took the stand in his own defense and testified that he had understood his rights as they were read to him. *Id.*, at 130A. He was convicted and sentenced to a prison term of 9 to 18 years.

The Connecticut Supreme Court reversed the conviction, holding that respondent had invoked his right to counsel by refusing to make written statements without the presence of his attorney. In the court's view, Barrett's expressed desire for counsel before making a written statement served as an invocation of the right for all purposes:

"The fact that the defendant attached his request for counsel to the making of a written statement does not affect the outcome of . . . our inquiry. No particular form of words has ever been required to trigger an individual's fifth amendment protections; nor have requests for

counsel been narrowly construed. The defendant's refusal to give a written statement without his attorney present was a clear request for the assistance of counsel to protect his rights in his dealings with the police. Such a request continues to be constitutionally effective despite the defendant's willingness to make oral statements. We conclude, therefore, that the defendant did invoke his right to counsel under the fifth and fourteenth amendments." 197 Conn., at 57, 495 A. 2d, at 1049 (citations omitted).

This invocation, the court believed, brought the case within what it called the "bright-line rule for establishing a waiver of this right." *Id.*, at 58, 495 A. 2d, at 1049. That rule requires a finding that the suspect "(a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." *Smith* v. *Illinois*, 469 U. S. 91, 95 (1984) *(per curiam)*. See also *Edwards, supra*, at 485, 486, n. 9. Because Barrett had not initiated further discussions with police, the court found his statement improperly admitted.

We think that the Connecticut Supreme Court erred in holding that the United States Constitution required suppression of Barrett's statement. Barrett made clear to police his willingness to talk about the crime for which he was a suspect. The trial court found that this decision was a voluntary waiver of his rights, and there is no evidence that Barrett was "threatened, tricked, or cajoled" into this waiver. *Miranda*, 384 U. S., at 476. The Connecticut Supreme Court nevertheless held as a matter of law[1] that respond-

---

[1] The Connecticut Supreme Court noted in its opinion that the trial court "impliedly found that the defendant had requested counsel." 197 Conn. 50, 56, 495 A. 2d 1044, 1048 (1985). This statement does not suggest, however, that the request for counsel was in fact all-inclusive, and the Supreme Court expressly noted the trial court's finding that defendant had refused to give a written statement without his attorney present. *Id.*, at 56, n. 6, 495 A. 2d, at 1048, n. 6. The holding that Barrett had invoked his right to

ent's limited invocation of his right to counsel prohibited all interrogation absent initiation of further discussion by Barrett. Nothing in our decisions, however, or in the rationale of *Miranda*, requires authorities to ignore the tenor or sense of a defendant's response to these warnings.

The fundamental purpose of the Court's decision in *Miranda* was "to assure that *the individual's right to choose* between speech and silence remains unfettered throughout the interrogation process." *Id.*, at 469 (emphasis added). See also *Moran* v. *Burbine*, 475 U. S. 412, 426 (1986) ("*Miranda* attempted to reconcile [competing] concerns by giving the *defendant* the power to exert some control over the course of the interrogation") (emphasis in original); *Oregon* v. *Elstad*, 470 U. S. 298, 308 (1985) ("Once warned, the suspect is free to exercise *his own volition* in deciding whether or not to make a statement to the authorities") (emphasis added). To this end, the *Miranda* Court adopted prophylactic rules designed to insulate the exercise of Fifth Amendment rights from the government "compulsion, subtle or otherwise," that "operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked." *Miranda, supra,* at 474. See also *Smith, supra,* at 98; *Oregon* v. *Bradshaw*, 462 U. S. 1039, 1044 (1983). One such rule requires that, once the accused "states that he wants an attorney, the interrogation must cease until an attorney is present." *Miranda, supra,* at 474. See also *Edwards,* 451 U. S., at 484. It remains clear, however, that this prohibition on further questioning—like other aspects of *Miranda*—is not itself required by the Fifth Amendment's prohibition on coerced confessions, but is instead justified only by reference to its prophylactic purpose. See *New York* v. *Quarles*, 467 U. S. 649, 654 (1984). By prohibiting further interrogation after the invocation of these rights, we erect an auxiliary barrier against police coercion.

counsel, then, rests on a legal conclusion about the effect of his limited invocation rather than on a factual finding.

But we know of no constitutional objective that would be served by suppression in this case. It is undisputed that Barrett desired the presence of counsel before making a written statement. Had the police obtained such a statement without meeting the waiver standards of *Edwards*, it would clearly be inadmissible.[2] Barrett's limited requests for counsel, however, were accompanied by affirmative announcements of his willingness to speak with the authorities. The fact that officials took the opportunity provided by Barrett to obtain an oral confession is quite consistent with the Fifth Amendment. *Miranda* gives the defendant a right to choose between speech and silence, and Barrett chose to speak.

The Connecticut Supreme Court's decision to the contrary rested on the view that requests for counsel are not to be narrowly construed. 197 Conn., at 57, 495 A. 2d, at 1049. In support of this premise, respondent observes that our prior decisions have given broad effect to requests for counsel that were less than all-inclusive. See *Bradshaw, supra,* at 1041–1042 ("I do want an attorney before it goes very much further"); *Edwards, supra,* at 479 ("I want an attorney before making a deal"). We do not denigrate the "settled approach to questions of waiver [that] requires us to give a broad, rather than a narrow, interpretation to a defendant's request for counsel," *Michigan* v. *Jackson,* 475 U. S. 625, 633 (1986), when we observe that this approach does little to aid respondent's cause. Interpretation is only required where the defendant's words, understood as ordinary people would understand them, are ambiguous. Here, however, Barrett made clear his intentions, and they were honored by police.[3] To conclude that respondent invoked his right to

_____

[2] Because the attempts to record Barrett's statements were unsuccessful, we have no occasion to consider whether the result would be different if police had taped the statements and used the recording against Barrett.

[3] Since we reject the claim that Barrett's statements represent an ambiguous or equivocal response to the *Miranda* warnings, there is no

counsel for all purposes requires not a broad interpretation of an ambiguous statement, but a disregard of the ordinary meaning of respondent's statement.

We also reject the contention that the distinction drawn by Barrett between oral and written statements indicates an understanding of the consequences so incomplete that we should deem his limited invocation of the right to counsel effective for all purposes. This suggestion ignores Barrett's testimony—and the finding of the trial court not questioned by the Connecticut Supreme Court—that respondent fully understood the *Miranda* warnings. These warnings, of course, made clear to Barrett that "[i]f you talk to any police officers, anything you say can and will be used against you in court." App. at 48A. The fact that some might find Barrett's decision illogical[4] is irrelevant, for we have never "embraced the theory that a defendant's ignorance of the full consequences of his decisions vitiates their voluntariness." *Elstad, supra,* at 316; *Colorado* v. *Spring, post,* p. 564.

For the reasons stated, the judgment of the Connecticut Supreme Court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE BRENNAN, concurring in the judgment.

I concur in the judgment that the Constitution does not require the suppression of Barrett's statements to the police, but for reasons different from those set forth in the opinion of the Court. Barrett's contemporaneous waiver of his right to silence and limited invocation of his right to counsel (for the

---

need for us to address the question left open in *Smith* v. *Illinois,* 469 U. S. 91, 96, n. 3 (1984) *(per curiam).*

[4] We do not suggest that the distinction drawn by Barrett is in fact illogical, for there may be several strategic reasons why a defendant willing to speak to the police would still refuse to write out his answers to questions, or to sign a transcript of his answers prepared by the police, a statement that may be used against him.

purpose of making a written statement) suggested that he did not understand that anything he *said* could be used against him. However, the State eliminated this apparent ambiguity when it demonstrated that Barrett's waiver of his right to silence was voluntary, knowing, and intelligent. Barrett testified at trial that he understood his *Miranda* rights, *i. e.*, he knew that he need not talk to the police without a lawyer present and that anything he said could be used against him. Under these circumstances, the waiver of the right to silence and the limited invocation of the right to counsel were valid.

I

In *Miranda* v. *Arizona*, 384 U. S. 436 (1966), the Court held that custodial interrogation is inherently coercive and that a defendant must receive detailed warnings that he or she has the rights to remain silent and to receive assistance of counsel before and during questioning. A statement obtained from a defendant during custodial interrogation is admissible only if the State carries its "heavy burden" of establishing that a defendant has executed a valid waiver of the privilege against self-incrimination and the right to counsel. *Id.*, at 475. To do so, the State must demonstrate "an intentional relinquishment or abandonment of a known right or privilege." *Johnson* v. *Zerbst*, 304 U. S. 458, 464 (1938); see *Miranda, supra,* at 475–479. In making this determination, courts must examine "the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson* v. *Zerbst, supra,* at 464.

The language and tenor of the *Miranda* opinion suggested that the Court would require that a waiver of the rights at stake be "specifically made." See 384 U. S., at 470. While the Court retreated from that position in *North Carolina* v. *Butler*, 441 U. S. 369, 373 (1979), I continue to believe that the Court should require the police to obtain an "'affirmative waiver'" of *Miranda* rights before proceeding with interro-

gation. See *id.*, at 377 (quoting *Carnley* v. *Cochran*, 369 U. S. 506, 516 (1962)).

In this case, Barrett affirmatively waived his *Miranda* rights. Unlike the defendant in *Butler*, Barrett orally expressed his willingness to talk with the police *and* willingly signed a form indicating that he understood his rights. The police obtained an explicit oral waiver of the right to silence. Furthermore, the officer who administered the *Miranda* warnings to Barrett testified that the latter understood his rights "[c]ompletely": "I asked [Barrett] several times during my administration of those rights, if, in fact, he understood them; if there were points he wanted me to clarify, and he indicated to me, no, he understood everything fairly well." Tr. 452. At trial, one issue was whether Barrett voluntarily, knowingly, and intelligently waived his *Miranda* rights, and Barrett himself testified that he understood his rights as they were read to him. *Id.*, at 879–880.[1]

Had the State been without Barrett's testimony at trial, where he was represented by counsel, I could not reach this conclusion. Barrett's statement to police—that he would talk to them, but allow nothing in writing without counsel— created doubt about whether he actually understood that anything he *said* could be used against him. In other words, the statement is not, on its face, a knowing and intelligent waiver of the right to silence.[2] As a general matter, I be-

---

[1] The trial judge denied Barrett's motion to suppress the statements made following administration of the *Miranda* warnings, holding:

"[T]he Court concludes from the evidence it heard that [Barrett] indicated he understood perfectly what was being read to him. Not only did he indicate that he understood, he offered the statements that he did not need anything explained to him because he understood. So it was not merely a passive acquiescence and his agreement that he understood, he did go on to explain that he did not need anything explained to him because he perfectly understood." App. 70A.

[2] The Court states that "'a defendant's ignorance of the full consequences of his decisions'" would not "'vitiat[e] their voluntariness.'" *Ante*, at 530 (quoting *Oregon* v. *Elstad*, 470 U. S. 298, 316 (1985)). I do not accept that a defendant could voluntarily, knowingly, or intelligently

lieve that this odd juxtaposition (a willingness to talk and an unwillingness to have anything preserved) militates against finding a knowing or intelligent waiver of the right to silence. See *Butler, supra,* at 378 ("[T]here is no reason to believe that [the defendant's] oral statements, which followed a refusal to sign a written waiver form, were intended to signify relinquishment of his rights").[3] But Barrett's testimony revealed that he understood that he had rights to remain silent and to have an attorney present, and that anything he said could be used against him; nevertheless he chose to speak.

In sum, the State has carried its "heavy burden" of demonstrating waiver. It has shown that Barrett received the *Miranda* warnings, that he had the capacity to understand them[4] and *in fact* understood them, and that he expressly

---

waive a right that he or she does not understand to exist. Cf. *Schneckloth v. Bustamonte,* 412 U. S. 218, 277 (1973) (BRENNAN, J., dissenting) ("The Court holds today that an individual can effectively waive this right [to be secure against an unreasonable search] even though he is totally ignorant of the fact that, in the absence of his consent, such invasions of privacy would be constitutionally prohibited. It wholly escapes me how our citizens can meaningfully be said to have waived something as precious as a constitutional guarantee without ever being aware of its existence"); *ibid.* (MARSHALL, J., dissenting) ("I would have thought that the capacity to choose necessarily depends upon knowledge that there is a choice to be made. But today the Court reaches the curious result that one can choose to relinquish a constitutional right—the right to be free of unreasonable searches—without knowing that he has the alternative of refusing to accede to a police request to search").

[3] See also 1 W. LaFave & J. Israel, Criminal Procedure § 6.9(f), pp. 534–535 (1984 ed.) ("[T]he *Butler* facts certainly suggest that the defendant misperceived the effect of a waiver which was oral rather than written. Under such circumstances, there is much to be said for the view that the police are under an obligation to clear up misunderstandings of this nature which are apparent to any reasonable observer. Short of this, it certainly makes sense to conclude that the defendant's conduct should significantly increase the prosecution's burden to overcome the presumption against waiver of the *Miranda* rights").

[4] It is undisputed that the defendant here, unlike the defendant in *Butler,* had the capacity to understand his rights: the police ascertained that Barrett had a 12th-grade education, Tr. 458, while in *Butler* there was a

waived his right to silence, saying that he "had no problem in talking about the incident." Tr. 452; see also *id.*, at 461–462, 490–491, 674. In my view, each of these findings was essential to the conclusion that a voluntary, knowing, and intelligent waiver of the *Miranda* rights occurred.

## II

Barrett argues that his refusal to make a written statement without an attorney present constituted an invocation of the right to counsel for all purposes and that any further interrogation after this mention of his desire for an attorney was impermissible under *Edwards* v. *Arizona,* 451 U. S. 477 (1981). It is settled that any plain reference, however glancing, to a need or a desire for representation must result in the cessation of questioning. See *Miranda,* 384 U. S., at 444–445 (questioning must cease when the accused "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking"); *Smith* v. *Illinois,* 469 U. S. 91 (1984) *(per curiam)*.

I believe that a partial invocation of the right to counsel, without more, invariably will be ambiguous. It gives rise to doubts about the defendant's precise wishes regarding representation and about his or her understanding of the nature and scope of the right to counsel. Thus, the police may not infer from a partial invocation of the right to counsel *alone* that the defendant has waived any of his or her rights not specifically invoked.

However, circumstances may clarify an otherwise ambiguous situation. If the partial invocation is accompanied by an explicit waiver of the right to silence that is voluntary, knowing, and intelligent, it may lose its ambiguity.[5] It may be-

dispute over whether the defendant could read. *North Carolina* v. *Butler,* 441 U. S. 369, 378 (1979).

[5] In order for a valid waiver and partial invocation of the right to counsel to occur, the accused must effect them contemporaneously. In *Smith* v. *Illinois,* 469 U. S. 91 (1984) *(per curiam)*, the Court considered a defendant's plain request for counsel that had been closely followed by statements

come clear that the portion of the right to counsel that was not invoked was in fact waived, when, for example, a knowing and intelligent waiver of the right to silence necessarily includes a waiver of the right to have counsel present at questioning.   This is such a case.[6]   Here Barrett's limited invocation was not ambiguous: It was accompanied by an express waiver of his right to silence, the validity of which was plainly established by his subsequent trial testimony.   The accompaniment of Barrett's reference to his limited desire for counsel with an explicit waiver of his right to silence rendered permissible the authorities' use of his statements.[7]

For these reasons, I concur in the judgment of the Court.

rendering equivocal or ambiguous his first request.   The State Supreme Court determined that the defendant's statements, considered as a totality, were ambiguous and therefore did not invoke his right to counsel.   We held that "an accused's *postrequest* responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself."   *Id.*, at 100.   Thus, if the initial request for counsel is clear, as it was here, the police may not create ambiguity in a defendant's desire by continuing to question him or her about it.

[6] See also *United States* v. *Jardina*, 747 F. 2d 945, 949 (CA5 1984) (The defendant stated "without the slightest ambiguity that he would then and there answer some questions but not others" and "clearly indicated that he wished his attorney to work out a cooperative deal with the government in the future."   The Court of Appeals found that these combined statements "did not invoke any *present* right to counsel").

[7] It is undisputed that "[h]ad the police obtained [a written] statement without meeting the waiver standards of *Edwards* [v. *Arizona*, 451 U. S. 477 (1981)], it would clearly be inadmissible."   *Ante*, at 529.   Barrett's invocation of his rights demonstrates that he opposed any immediate preservation of statements made without counsel.   If the attempt to tape Barrett's statements had succeeded, the recording would have been inadmissible.

In addition, the police attempted to persuade Barrett to waive the right he had asserted not to make a written statement without the assistance of counsel, not once, but twice, absent any indication from Barrett that he had changed his mind on this point.   Tr. 689 ("Sergeant Genovese at the first [questioning] and Lieutenant Howard at the second inquired whether or not he had changed his mind [about reducing his statements to writing]"); see also *id.*, at 521.   In *Edwards* v. *Arizona*, 451 U. S., at 484–485,

JUSTICE STEVENS, with whom JUSTICE MARSHALL joins, dissenting.

The Court's disposition of this case raises two troublesome questions.

First, why did the Court decide to exercise its discretion to grant review in this case? The facts of the case are surely unique. They do not give rise to any issue of general or recurring significance. There is no conflict among the state or federal courts on how the narrow question presented should be resolved. It is merely a case in which one State Supreme Court arguably granted more protection to a citizen accused of crime than the Federal Constitution requires.[1] The State "asks us to rule that the state court interpreted federal rights too broadly and 'overprotected' the citizen." *Michigan* v. *Long*, 463 U. S. 1032, 1068 (1983) (STEVENS, J., dissenting). If this is a sufficient reason for adding a case to our already overcrowded docket, we will need, not one, but several newly fashioned "intercircuit tribunals" to keep abreast of our work.

Second, why was respondent's request for the assistance of counsel any less ambiguous than the request in *Edwards* v. *Arizona*, 451 U. S. 477 (1981)? In that case, the defendant said that he wanted an attorney " 'before making a deal.' "

---

we held that once an accused invokes the right to counsel, he or she is not subject to further custodial interrogation "until counsel has been made available to him [or her], unless the accused . . . initiates further communication, exchanges, or conversations with the police." Here the police failed to respect Barrett's limited assertion of his right to counsel. Had a written statement been obtained as a result of these persistent efforts to change Barrett's mind, it would have been inadmissible.

[1] "The central contention of the Petitioner in this action is that the Connecticut Supreme Court unduly expanded the protections accorded criminal defendants under the Fifth Amendment to the United States [C]onstitution when it determined that this defendant involuntarily waived his right to assistance of counsel at his interrogation. This result was possible only through use of a prophylactic rule which ignored the circumstances of this case." Pet. for Cert. 5.

*Id.,* at 479. He also said he would talk to the police "'but I don't want it on tape.'" *Ibid.* The police interrogation complied with the everyday meaning of both of those conditions; it occurred before Edwards made any "deal"—indeed, he never made a deal—and no tape recording of the session was made. The Court nevertheless found the interrogation objectionable. In this case, respondent requested an attorney before signing a written statement. Why the police's compliance with the literal terms of that request makes the request—as opposed to the subsequent waiver[2]—any less of a request for the assistance of counsel than Edwards' is not adequately explained in the Court's opinion. In all events, the Court does not purport to change the governing rule of law that judges must "give a broad, rather than a narrow, interpretation to a defendant's request for counsel." *Michigan* v. *Jackson,* 475 U. S. 625, 633 (1986).

I would dismiss the writ of certiorari as improvidently granted.

---

[2] In this case, the Connecticut Supreme Court interpreted the trial court's ruling as embodying a factual finding that respondent had requested the assistance of counsel but *thereafter* waived his right to counsel. It agreed with that factual determination but held that the subsequent waiver was ineffective as a matter of law. 197 Conn. 50, 60, 495 A. 2d 1044, 1050 (1985).