733 So.2d 1087 (1999)
Jose BORRELL, Appellant,
v.
The STATE of Florida, Appellee.
No. 97-3442.
District Court of Appeal of Florida, Third District.
May 12, 1999.
Bennett H. Brummer, Public Defender, and Julie M. Levitt and Robert Godfrey and Beth C. Weitzner, Assistant Public Defenders, for appellant.
Robert A. Butterworth, Attorney General, and Lara J. Edelstein and Douglas J. Glaid, Assistant Attorneys General, for appellee.
Before COPE, LEVY and GODERICH, JJ.
*1088 COPE, J.
Defendant-appellant Jose Borrell appeals the denial of his motions to suppress statements and evidence. We affirm.
Defendant was a busboy at a hotel in Key West. During an argument defendant shot and killed a co-worker. Within minutes, a police officer, who was responding to a call about the shooting, saw defendant rapidly walking toward him near the hotel. As soon as defendant saw the officer he raised his hands as if in surrender, and the officer handcuffed him. Because defendant was unarmed, the officer asked defendant where the gun was. Defendant said it was "down the street on a roof." After other officers arrived, the first officer asked defendant to show them where the gun was and defendant began to lead the officers down the street. At this point, defendant had not been advised of his Miranda[1] rights.
As the group was walking down the street, another officer arrived in a patrol car. Defendant was placed in the back of the patrol car and given his Miranda warnings. Defendant stated that he did not want to answer questions and wanted a lawyer.
One of the officers asked defendant if he was still going to help them find the gun and defendant responded yes. Defendant led the officers to the gun, which was under a tarp on a nearby boat. The officers took no other steps to interrogate defendant.
Defense counsel moved to suppress 1) the pre-Miranda statement that the gun was on a roof; 2) the post-Miranda "yes" reconfirming defendant's agreement to show the police officers the gun's location; and 3) the gun itself. The trial court denied the motion. Defendant was convicted of first degree murder and has appealed.
With respect to the pre-Miranda statement, defendant points out that he was handcuffed when the officer asked him where the gun was. Defendant contends that he was in custody for Miranda purposes, and that he should have been given Miranda warnings before the officer asked about the gun.
We reject this argument on the controlling and indistinguishable authority of New York v. Quarles, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984). In that case the police were informed that an armed man who had moments before committed a sexual battery had entered a nearby store. When the man was apprehended and handcuffed minutes later he was not armed. Before issuing Miranda warnings, the arresting officer asked him where the gun was and the man responded that it was "over there" while nodding in the direction of some empty cartons. In affirming the denial of that defendant's motion to suppress the statement, the court stated:
We hold that on these facts there is a "public safety" exception to the requirement that Miranda warnings be given before a suspect's answers may be admitted into evidence, and that the availability of that exception does not depend upon the motivation of the individual officers involved....
Whatever the motivation of individual officers in such a situation, we do not believe that the doctrinal underpinnings of Miranda require that it be applied in all its rigor to a situation in which police officers ask questions reasonably prompted by a concern for the public safety....
. . . .
... We think police officers can and will distinguish almost instinctively between questions necessary to secure their own safety or the safety of the public and questions designed solely to elicit testimonial evidence from a suspect.
... The exception which we recognize today, far from complicating the thought *1089 processes and the on-the-scene judgments of police officers, will simply free them to follow their legitimate instincts when confronting situations presenting a danger to the public safety.
Id. at 655-58, 104 S.Ct. 2626 (footnote omitted). The circumstances of the present case are indistinguishable from Quarles and we affirm the denial of the motion to suppress the pre-Miranda statement on that authority.
Defendant next argues that the trial court erred in denying the motion to suppress his post-Miranda "yes," in which he reconfirmed that he would help the officers locate the gun. He asserts that the gun itself should have been suppressed as a product of impermissible post-Miranda interrogation. Again, we disagree.
Here, the defendant had already agreed, pre-Miranda, to help the officers find the gun. The need to secure the weapon from members of the public who might encounter it, especially children, remained urgent. Under the logic of Quarles, certainly the officers were entitled to inquire whether the defendant intended to stick by his pre-Miranda agreement to show the officers where the gun was.
Defendant urges, however, that once he invoked the right to be silent and the right to counsel, he had invoked constitutional rights. He contends that it is one thing to dispense with Miranda's prophylactic warning under Quarles, and quite another thing to allow any questioning whatsoever once the defendant has invoked his constitutional rights.
That argument has been rejected in United States v. DeSantis, 870 F.2d 536 (9th Cir.1989). In that case, a defendant was given Miranda warnings and requested counsel.[2] Defendant asked to change clothes in the bedroom and an officer asked whether there were any weapons. Defendant answered affirmatively. A gun was found and defendant was charged with possession of a firearm by a felon.
In affirming the denial of the motion to suppress defendant's statement and the firearm, the Ninth Circuit said:
[T]he [Supreme] Court has made clear that the "prohibition on further questioning like other aspects of Miranda is not itself required by the Fifth Amendment's prohibition on coerced confessions, but is instead justified only by reference to its prophylactic purpose." Connecticut v. Barrett, 479 U.S. 523, 528, 107 S.Ct. 828, 831, 93 L.Ed.2d 920 [1987] (citing Quarles).
The same considerations that allow the police to dispense with providing Miranda warnings in a public safety situation also would permit them to dispense with the prophylactic safeguard that forbids initiating further questioning of an accused who requests counsel....
... Society's need to procure the information about the location of a dangerous weapon is as great after, as it was before, the request for counsel.
870 F.2d at 541; accord United States v. Mobley, 40 F.3d 688, 692 (4th Cir.1994) (agreeing "with the Ninth Circuit that the `public safety exception' to the Miranda framework should be recognized under the present circumstances," but finding the exception inapplicable on the facts presented).
In this case, the police were called to the scene immediately after the shooting and within minutes came upon defendant who surrendered to them, but who was unarmed. Under those circumstances, there was "an objectively reasonable need to protect the police or the public from any immediate danger associated with the weapon," Quarles, 467 U.S. at 659 n. 8, 104 S.Ct. 2626, and the trial court was correct in denying defendant's motions to suppress *1090 the second statement as well as the gun itself.
Defendant argues that State v. Meola, 488 So.2d 645 (Fla. 2d DCA 1986) is inconsistent with the ruling in this case. We do not agree. In that case, the defendant chased his girlfriend and another person in a car. The car chase ended in a parking lot and the police arrived. The officers were told that Meola had a gun in the car and had pointed it at the two victims. Meola was arrested and given his Miranda warnings, after which he invoked his right to silence.
The officers then asked Meola if he had a gun in his car. Meola stated that he had a gun on the front seat. The officers saw the gun on the front seat and secured it.
The Meola court held that the gun had properly been suppressed. It concluded that the Quarles public safety exception to Miranda did not apply:
Unlike Quarles, the gun was not hidden in a public area. Rather, it was in plain view in the front seat of Meola's car which was being impounded by the police. Moreover, Officer Middleton had already given Meola his Miranda rights, thus negating any argument that an emergency existed to justify the question concerning the gun. Thus, the trial court was correct in suppressing any statements made after Miranda warnings were given.
Id. at 646.
Defendant reads Meola to hold that once Miranda warnings have been given, then as a matter of law there cannot be a continuing public safety emergency which would call for further questioning. We do not think that the Second District meant to announce such a proposition. As we view the matter, the Second District made its statement in the context of the facts which were there presented.
In Meola, the defendant had been alone in his car. At the time that he was arrested and handcuffed, he was outside of his car. The handgun was on the front seat and visible through the windows, but was not accessible to other persons. Under all of the circumstances, including the fact that the defendant had been handcuffed and Mirandized, the court concluded that the public safety exception did not apply. Stated differently, assuming hypothetically that Meola had discarded the handgun somewhere in the public parking lot, instead of leaving it on the front seat of his car, we are quite certain that the Second District's analysis would have been very differentnotwithstanding that Meola had been handcuffed and Mirandized. The present case and DeSantis illustrate that there are circumstances in which exigent circumstances can exist despite the issuance of Miranda warnings.
Defendant asks that we certify direct conflict with Meola. We decline to do so, because we believe that Meola is appropriately distinguished on its specific facts.
Affirmed.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] For purposes of discussion the court accepted defendant's version of events. See id. at 538 n. 1.