In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1507

Eddie E. Lewis,

Petitioner-Appellant,

v.

Charles B. Miller, Superintendent,

Respondent-Appellee.


Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:97CV0300AS--Allen Sharp, Judge.


Argued March 1, 2000--Decided June 30, 2000


  Before Eschbach, Coffey, and Diane P. Wood, Circuit
Judges.

  Diane P. Wood, Circuit Judge.  Eddie E. Lewis was
convicted in the state courts of Indiana of first
degree murder and murder while committing the
crime of arson. These convictions were affirmed
on appeal to the Supreme Court of Indiana, and
the Indiana courts later rejected his request for
collateral relief. This petition under 28 U.S.C.
sec. 2254 followed, in which Lewis has offered
two reasons why the Indiana courts violated his
constitutional rights: police officers violated
his Fifth Amendment right to remain silent and to
have counsel present when they continued to
interrogate him after he indicated that he wanted
to remain silent and seek the help of a lawyer;
and his confession was unconstitutionally
coerced. We conclude that the district court
correctly rejected these claims, and we therefore
affirm.

I

  A.  The Crimes

  The crimes for which Lewis was convicted
occurred quite some time ago. In the early
morning hours of January 7, 1977, Lewis and
Ronald Wiggly decided to go over to the home of
Mary Mingo, the sister of Lewis's girlfriend,
with the idea that they would scare her. Wiggly

had a shotgun he had retrieved from his car. When they got to Mingo's house, Lewis set fire to a beer bottle filled with gasoline and threw it at the rear door. He turned and fled, and then heard a shot.

Mingo had been sitting in her living room with Richard Taylor. She noticed the fire through her kitchen window and went to investigate, as did Taylor. Upon opening the back door, Taylor was struck in the head and chest by a shotgun blast, which inflicted the wounds that proved fatal to him. The police investigation revealed not only a beer bottle with a smoldering rag outside Mingo's house, but also footprints leading from Mingo's yard to the house where Lewis was staying. Other evidence also connected Lewis with the beer bottle and the shotgun. See generally Lewis v. State, 397 N.E.2d 983, 984 (Ind. 1979).

B.   The Interrogation

Because the facts surrounding Lewis's interrogation by the local police are central to his petition and this appeal, we recount them in detail. At approximately 9:00 a.m. on January 7, the police approached Lewis. He voluntarily accompanied them to the police station for questioning. Before being transported, and then again while en route, the officers gave him his Miranda warnings. See Miranda v. Arizona, 384 U.S. 436 (1966). Once at the stationhouse, he was placed in an interrogation room and questioned by Officers Lewis DeLuna and Wayne Brown for approximately two hours. DeLuna and Brown reiterated the Miranda warnings before that session began.

Whatever went on during that two-hour period is unclear. (There is some indication that the police confronted Lewis about previous incidents between himself and Mingo; Lewis denied any involvement other than once breaking her window.) Nonetheless, something prompted DeLuna and Brown to decide to conduct a polygraph examination on Lewis. Lewis was taken to another building for this purpose. Before beginning the polygraph interrogation, Officer Charles Szczerbik (who was the administrator) advised Lewis of his rights and gave him a Miranda waiver form to sign. After reading the form, Lewis said that he "wanted to talk with an attorney before taking the polygraph test because he was wary of polygraph examinations." 397 N.E.2d at 984. Szczerbik immediately stopped what he was doing, telephoned DeLuna and Brown, and informed them that Lewis refused to take the test.

Lewis was then returned to the police station. By this time, it was afternoon. After yet another

set of Miranda warnings (his fifth), the police began to interrogate him again. DeLuna did not recall when the post-polygraph interrogation began, but Lewis testified that he was brought back to the station after the test at about 12:30-1:00 p.m. According to the Supreme Court of Indiana, Lewis "evidently gave them the impression that he did not want to talk to them any more at that time." Id. at 985. Around 3:00 p.m., the police ceased their interrogation and moved Lewis to the turnkey's room.

Another two hours passed, after which Lewis was brought back to the interrogation room. Lewis initially remained silent. A new officer, Officer Kenneth Shannon, then arrived and began further questioning. Before he began speaking with Lewis, he read the waiver of rights form to Lewis, asked Lewis to read it for himself, and then read the form to him again. Lewis finally signed the waiver form at 5:43 p.m. He gave a verbal account of the murder and signed a written transcription that Officer Shannon had prepared. While Lewis was talking, a shotgun that Officer Shannon had shown him for purposes of identification remained in the interrogation room (ominously, says Lewis; innocuously, says the state). In either event, the state wound up with Lewis's confession; a Lake County Superior Court jury convicted him on the two charges; and he was sentenced to a term of life imprisonment for the charge of murder during the perpetration of arson.

II

Almost immediately after his arrest, Lewis began his efforts (which continue to this day) to suppress his confession. Before his trial, he moved to suppress his statement on the ground that it had been obtained in violation of his Miranda rights to counsel and to remain silent, and he also alleged that the statement was involuntary. At the trial itself, Lewis objected to the admission of the statement solely on the ground that it had been taken in violation of his Miranda rights. On direct appeal to the Supreme Court of Indiana, he argued (1) that when he told Officer Szczerbik (the polygraph officer) that he wished to talk to a lawyer, the police were required to cease all interrogation from that point forward until a lawyer had been provided; (2) that the police violated his rights under Miranda by ignoring his indication by his actions that he wished to remain silent when they continued to interrogate him after the polygraph encounter, briefly, and then, after the two-hour interlude, by Officer Shannon.

The Supreme Court of Indiana rejected both claims. With respect to the first, it held that

"there was substantial evidence from which the trial court could have found that appellant Lewis was asserting his right to counsel only with respect to the polygraph examination, and that his rights under Miranda v. Arizona, supra, were not denied by further interrogation." 397 N.E.2d at 985. With respect to the second, the court held that the police did not violate his rights by renewing their questioning some two hours after the first round stopped. When Lewis indicated by his actions that he did not wish to be questioned, the police officers complied with his desires. As the court held, "[t]he renewed questioning which produced the confession took place nearly two hours later, by a different policeman, Officer Shannon," id., who twice orally advised Lewis of his rights and obtained a signed waiver form. This was enough, the court held, to satisfy Lewis's right to have questioning cut off--a right that the court noted did not prohibit "any further interrogation at any time." Id. (emphasis in original).

In 1986, Lewis filed a pro se petition for post-conviction relief in which he alleged ineffective assistance of trial counsel on three grounds, including failure of trial counsel properly to challenge his confession on the ground that he had been detained without probable cause when he made the statement. Later, he was permitted to amend the petition to include a claim of ineffective appellate counsel. After a hearing, the state superior court denied the conviction in 1990, holding that the admissibility of the confession was res judicata because it had been decided on direct appeal. Lewis, who finally had assistance of counsel, responded with a motion for relief from judgment. The court granted the motion prepared by counsel and vacated the order denying post-conviction relief.

Working once again from a clean slate, Lewis filed an amended petition in 1991. Eventually, after some preliminary procedural confusion because of the pro se nature of his initial petition, see Lewis v. State, 595 N.E.2d 753 (Ind. Ct. App. 1992), the superior court accepted the petition, but it denied relief on the merits. Lewis appealed that decision to the Indiana Court of Appeals, where he raised five claims for review: (1) whether the post-conviction court used the proper standard of review during his hearing, (2) whether the trial court erred when it instructed the jury on the elements of the offense of murder while perpetrating arson and accessory before the fact, (3) whether the post-conviction court erred when it refused to consider the admissibility of Lewis's statement to the police based on the doctrine of res

judicata, (4) whether Lewis's conviction had to be reversed because his confederate was acquitted in a later trial, and (5) whether Lewis had been denied the effective assistance of both trial and appellate counsel. Conspicuous by its absence was any specific claim alleging that his confession was involuntary, apart from the various Miranda problems he was trying to raise.

In its discussion of claim 3, the appellate court noted that the Supreme Court of Indiana had dealt with the admissibility of Lewis's statement in its opinion on direct review, which under Indiana law precluded further inquiry into the subject absent extraordinary circumstances. The court found no such circumstances in Lewis's case. Its comment in footnote 2 reflects the fact that Lewis was once again arguing that the violation at issue related to the continuation of interrogation after his effort to invoke his rights, and not that it involved coercion. Finding no merit in any of the claims he raised, the Indiana Appellate Court affirmed the denial of post-conviction relief, and the Supreme Court of Indiana denied Lewis's petition to transfer the case.

That brought Lewis to the federal court. In his petition for relief under 28 U.S.C. sec. 2254, he raised ten claims. The only one relevant to this appeal is the first, which claimed that the state trial court violated his Fifth and Sixth Amendment rights by failing to suppress his confession. The district court's order is somewhat ambiguous about the basis for this claim, because it comments that "[a]t his state trial, the petitioner attempted to retract his confession claiming that it was not a voluntary statement and was instead the product of duress and coercion." But then the district court reviewed the Indiana proceedings on this point and made the following finding:

The Supreme Court of Indiana noted that the petitioner read and signed the waiver form and expressed no desire to consult with an attorney at the time of his confession. The court held that not only was there sufficient evidence to support a finding that the petitioner asserted his right to counsel only with respect to the polygraph examination, and further, his right to cut off questioning was scrupulously honored by the police. Lewis, 397 N.E.2d at 985.

Noting that Lewis's federal petition was not filed until 1997, and thus was governed by the standards set forth in the Anti-terrorism and Effective Death Penalty Act (AEDPA), the court denied the petition.

III

A. Continued Interrogation After Attempted Polygraph

Lewis's first point on this appeal relates to the alleged violation of his rights under Miranda to have interrogation cease and to have counsel present after he told the polygraph examiner that he wanted to talk with a lawyer. This claim was adjudicated on the merits by the Supreme Court of Indiana, which leaves us only the task of deciding whether that court reached a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law." See 28 U.S.C. sec. 2254(d)(1).

We find no such error in the Supreme Court of Indiana's decision. That court rested its conclusion on the factual finding that Lewis's request for an attorney at the time he was with Officer Szczerbik was a limited one, that pertained only to the polygraph examination itself. Lewis's able appellate lawyers in this court concede that a defendant may invoke his right to counsel for a limited purpose, under decisions such as Connecticut v. Barrett, 479 U.S. 523, 529 (1987), and United States v. LaGrone, 43 F.3d 332, 336-37 (7th Cir. 1994). They urge, however, that we should adopt a presumption that once a person invokes his right to counsel, that invocation attaches for all future interrogation that may occur. This, they point out, is the rule for waivers of rights, so why should it not be the rule for invocations of rights.

Unfortunately, in Barrett the Supreme Court essentially foreclosed this argument, when it held that limited invocations of rights were possible. The Supreme Court of Indiana found that Lewis's statement here was limited to the polygraph proceeding. To the extent that this was a finding of fact, it is protected under 28 U.S.C. sec. 2254(d)(2) by an equally strict standard of review: we would have to find that the decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. It was not, and so we move on to the other aspect of this claim.

Wholly apart from the right to have counsel present during interrogation, Lewis also argues that the police had an unqualified duty to cease all interrogation once he indicated by his actions that he did not wish to talk to them. Instead, after waiting some two hours, Officer Shannon began again and ultimately extracted his confession. As Lewis's lawyers put it in their

brief, "[h]is confession occurred only because he was worn down by the constant interrogation of a number of officers, culminating in Officer Shannon's highly coercive interrogation." Appellant's Brief at 9.

The Supreme Court of Indiana considered this argument, but it found that there was no reason why the police, having stopped interrogation at the suspect's request, had to regard their duty to do so as a perpetual one, citing Michigan v. Mosley, 423 U.S. 96 (1975). After Lewis's direct appeals were over, and long after the events in question occurred, the Supreme Court of the United States decided Edwards v. Arizona, 451 U.S. 477 (1981), in which the Court held that when a suspect invokes his Fifth Amendment right to counsel, the police must immediately cease questioning unless the suspect initiates further communication. See United States v. Jackson, 189 F.3d 502, 511 (7th Cir. 1999). But Edwards was not on the books at the time the Supreme Court of Indiana considered this case, and it cannot be applied retroactively in collateral challenges to a conviction. Solem v. Stumes, 465 U.S. 638, 650 (1984). We must therefore decide whether the Supreme Court of Indiana's decision was contrary to, or an unreasonable application of, clearly established pre-Edwards Supreme Court precedents.

Once again, Lewis's claim cannot survive that demanding standard of review. In White v. Finkbeiner, 611 F.2d 186 (7th Cir. 1979), this court (like the Supreme Court of Indiana) declined to read Miranda as prohibiting the authorities from initiating renewed questioning following a request for an attorney. Id. at 191. Instead, we looked at the totality of the circumstances to decide whether a voluntary, knowing, and intelligent waiver of the right to counsel occurred. See also United States ex rel. Karr v. Wolff, 732 F.2d 615, 619 (7th Cir. 1984). White was vacated and remanded to this court in light of Edwards, see 451 U.S. 1013 (1981), but it stands as a strong indication that the view the Supreme Court of Indiana took of the interrogation process was a reasonable one under pre-Edwards law and certainly was not contrary to existing Supreme Court decisions. Thus, the district court was correct to reject this argument as well.

B.  Coerced Confession

Last, we consider Lewis's argument that his statement was not voluntary because of Officer Shannon's coercive conduct. Counsel point to the following circumstances: Lewis had only a sixth-

grade education; he was kept in the same room for ten hours without food; he was alone in the room with Officer Shannon, who happened to be a relative and friend of the victim; and Officer Shannon prominently showed the shotgun to Lewis, kept it in the closed room throughout the interrogation, and (Lewis alleged) held it up against Lewis's head.

Had Lewis's coercion claim been properly presented to the Indiana courts, these facts would have been enough to require further exploration in a hearing. We conclude, however, that the coercion claim cannot be entertained at this point because of procedural default. In coming to this conclusion, because of the troubling nature of the allegations, we have conducted our own careful review of the record in the Indiana courts. We conclude that at no time did Lewis give those courts a full and fair opportunity to rule on the merits of this claim. See Morrison v. Duckworth, 898 F.2d 1298, 1300 (7th Cir. 1990). Lewis notes in his reply brief that he included a complaint about voluntariness in his motion to suppress, but that is not enough. He had the obligation to present this claim to the Indiana Supreme Court, see O'Sullivan v. Boerckel, 526 U.S. 838, 845-46 (1999), and he did not. At oral argument, he directed our attention to particular pages of his brief before the Indiana Supreme Court. Our review of those materials shows that at most Lewis put facts before the court that suggested coercion. But the brief contains not a word about coercion or involuntariness as a legal basis for relief. Whether Lewis was coerced into waiving his right to counsel and to remain silent are questions distinct from whether his statement was voluntary under the totality of the circumstances. Baskin v. Clark, 956 F.2d 142, 145 (7th Cir. 1992). Lewis cannot assume that his arguments about his Miranda rights were enough to raise his coercion point as well, even if the underlying facts are the same. Winsett v. Washington, 130 F.3d 269, 273-74 (7th Cir. 1997).

We note as well that Lewis did not present the coercion claim to the Indiana courts during his post-conviction proceedings. This omission independently bars our review of the point. See Momient-El v. DeTella, 118 F.3d 535, 539 (7th Cir. 1997). Finally, we note that insofar as the Supreme Court of Indiana addressed the interrogation by Officer Shannon, it stressed that Officer Shannon orally advised appellant of his rights twice before Lewis signed the waiver form. The record in the state court also indicates that Officer Shannon showed Lewis the shotgun for a legitimate purpose--identification--and so it is not obvious that the shotgun's

continued presence in the room was designed to intimidate Lewis. These points could have been explored in a hearing in the state courts, had Lewis presented them properly. Because he did not, they are forfeited now.

IV

For the reasons stated, we Affirm the judgment of the district court.