McKEOWN, Circuit Judge,
dissenting:
It is likely that few Americans can profess fluency in the Bill of Rights, but the *1214 Fifth Amendment is surely an exception.[1] From television shows like “Law & Order” to movies such as “Guys and Dolls,” we are steeped in the culture that knows a person in custody has “the right to remain silent.” Miranda is practically a household word. And surely, when a criminal defendant says, “I plead the Fifth,” it doesn’t take a trained linguist, a Ph.D, or a lawyer to know what he meant.
Here, Anderson said, “I don’t even wanna talk about this no more,” “Uh! I’m through with this,” and “I plead the Fifth.” The officer did not stop questioning but instead responded, “Plead the Fifth. What’s that?”, continued the questioning, and ultimately obtained a confession. It is rare to see such a pristine invocation of the Fifth Amendment and extraordinary to see such flagrant disregard of the right to remain silent. Under even the narrowest construction of AEDPA,[2] the state court erred in failing to recognize this constitutional violation. I respectfully dissent from the majority’s view that there was some ambiguity in Anderson’s unequivocal invocation of the Fifth Amendment such that clarifying questions were permitted.
The continued questioning violated the Supreme Court’s bright-line rule established in Miranda v. Arizona. Once a person invokes the right to remain silent, all questioning must cease:
If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise.
384 U.S. 436, 473-74, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
The expansion of legitimate clarifying questions to cover this situation is contrary to, and an unreasonable application of, clear Supreme Court precedent. Additionally, even a cursory examination of the interrogation transcript reveals that the state court made an unreasonable determination of the facts in evaluating Anderson’s Miranda claim. Anderson’s invocation was not ambiguous, and only one reasonable conclusion can be gleaned from his statements, especially his last declaration, “I plead the Fifth:” he invoked his right to remain silent and wanted to end the interrogation.
1. The Interrogation
After an initial interview about the murder, Anderson was brought to the police station for further questioning. The relevant portion of the transcript is so extraordinary that it bears repeating. Despite clear and repeated invocations of his right to remain silent, the officers continued to question Anderson about the murder:
*1215 Officer: You act like you’re cryin’ like a baby, an’ you can’t cry for someone that was a no good ... an’ you killed him for a good reason.
Anderson: No, way! No, way. I — You know what, I don’t even wanna talk about this no more. We can talk about it later or whatever. I don’t want to talk about this no more. That’s wrong. That’s wrong.
Officer: Right now, you show your remorse.
Immediately after this exchange, the officer continued to interrogate Anderson regarding his drug use on the day of the murder, including whether Anderson had used pipes. This questioning is significant because the murder victim was found with a pipe next to him. The entire conversation was about the murder. In response to this questioning, Anderson unambiguously indicated that he wanted to end the interrogation by stating that he was “through with this,” wanted to “be taken into custody” and “I plead the Fifth”:
Anderson: I have nothin’ to worry about, nothin’ to hide. That’s why I show no remorse. Nothin’ to worry about, nothin’ to hide. He was my friend, an’ there’s no way I would do it. No, way I would do it.
Officer: Were you high that day?
Anderson: No, sir. I — probably was later on. Yes.
Officer: Did you have any dope with you that ... that day?
Anderson: No, sir.
Officer: No, dope at all? What do you smoke with?
Anderson: I smoke with my ... my fingers.
Officer: When you smoke your dope what do you do with that? How do you smoke that?
Anderson: You smoke it with pipes and stuff like that.
Officer: Okay. What kind of pipes?
Anderson: Lines.
Officer: What kind of pipes?
Anderson: N’ah ... I would — I—
Officer: Well, what kind of pipes?
Anderson: Uh! I’m through with this. I’m through. I wanna be taken into custody, with my parole ...
Officer: Well, you already are. I wanna know what kind of pipes you have?
Anderson: I plead the [F]ifth.
Officer: Plead the [F]ifth. What’s that?
Anderson: No, you guys are wrong. You guys are wrong. You guys have — I’ve tried to tell you everything I know. As far as I know, you guys are lying, uh, making things up, extenuating and that’s not right. It’s not right.
Officer: We’re not makin’ anything up.
Anderson: Sir, sure you are.
Officer: What are we makin’ up?
Anderson: You’re tellin’ me that I didn’t have tears in my eyes.
Officer: Yeah.
Anderson: You’re tellin’ me, okay, that, uh, uh, Abe said I kilt him. That’s a lie.
The questioning continued until Anderson asked for a lawyer: “I’d like to have an attorney present.” At that juncture, the police turned off the tape recorder and, somewhat suspiciously, following this hiatus, the officer concluded that Anderson wanted to reinitiate the discussion. The questioning, which took place over a three-hour period, led to a confession by Anderson.
*1216 II. In Clear Violation of Miranda, The State Court Unreasonably Concluded That Anderson’s Invocation (“I Plead the Fifth”) Was Ambiguous
Against this backdrop, the state court accurately recognized that Anderson unambiguously invoked his right to remain silent when he stated, “I plead the Fifth,” but then went on to eviscerate that conclusion by stating that the comments were “ambiguous in context”:
In the present case, the defendant’s comments were ambiguous in context because they could have been interpreted as not wanting officers to pursue the particulars of his drug use as opposed to not wanting to continue the questioning at all. By asking defendant what he meant by pleading the fifth, the officers asked a legitimate clarifying question.
Using “context” to make an unambiguous invocation ambiguous defies both common sense and established Supreme Court law.
Although the Supreme Court has observed that in invoking a constitutional right, “a suspect need not ‘speak with the discrimination of an Oxford don,’ ” Davis v. United States, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (quoting id. at 476, 114 S.Ct. 2350 (Souter, J., concurring)), Anderson would meet even this erudite standard. This is not a case where the officers or the court were left scratching their heads as to what Anderson meant. Nothing was ambiguous about the statement “I plead the Fifth.”[3] That invocation should have brought an immediate end to questioning. Miranda, 384 U.S. at 473, 86 S.Ct. 1602.
Instead of honoring the request, the interrogating officers decided to “play dumb,” hoping to keep Anderson talking by responding, “Plead the Fifth. What’s that?” This effort to keep the conversation going was almost comical. The officer knew what “I plead the Fifth” meant. It is baffling that the state court determined that “[b]y asking defendant what he meant by pleading the Fifth, the officers asked a legitimate clarifying question.” Nothing needed clarification. What about the words “I plead the Fifth” would be unclear, ambiguous, or confusing to a reasonable officer? See Connecticut v. Barrett, 479 U.S. 523, 529, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987) (holding in the context of the invocation of the right to counsel that “[i]nterpretation is only required where the defendant’s words, understood as ordinary people would understand them, are ambiguous”). Rather, the officer hoped Anderson would explain more about the murder, the exact topic he did not want to talk about. They knew that continuing the interrogation was “reasonably likely to elicit an incriminating response” from Anderson. Rhode Island v. Innis, 446 U.S. 291, 303, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). And they were right.
The Supreme Court has countenanced clarifying questions only to ascertain whether the suspect actually invoked the right to remain silent. See, e.g., Miranda, 384 U.S. at 444-45, 86 S.Ct. 1602 (focusing only on the threshold question of whether the accused “indieate[d] in any manner and at any stage of the process that he wish[ed] to consult with an attorney before speaking” when deciding whether police had honored their Fifth Amendment rights); Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) (focusing on whether accused had actually “expressed his desire” for, or *1217 “clearly asserted” his invocation of his Fifth Amendment rights); Smith v. Illinois, 469 U.S. 91, 95, 105 S.Ct. 490, 88 L.Ed.2d 488 (1984) (holding that “[t]his case concerns the threshold inquiry: whether Smith invoked his right to counsel in the first instance”). Ignoring this principle, the state court found that the comments were ambiguous “because they could have been interpreted as not wanting officers to pursue the particulars of his drug use as opposed to not wanting to continue the questioning at all.”
While the majority defers to this farfetched reasoning, the rationale for the state court decision falls of its own weight. The police did not ask Anderson what subject he did not want to discuss; nor did any of their follow-up questioning address this topic. The state court’s characterization is a fanciful re imagining of the colloquy between Anderson and the police, and under AEDPA, certainly an unreasonable determination of the facts. Significantly, the question can hardly be characterized as one to clarify or double-check whether Anderson invoked his right to remain silent, the only legitimate clarifying inquiry authorized by Supreme Court precedent. Smith, 469 U.S. at 95, 105 S.Ct. 490. The state court’s conclusion that “[i]t was the defendant, not the interrogators, who continued the discussion,” ignores the bedrock principle that the interrogators should have stopped all questioning. A statement taken after the suspect invoked his right to remain silent “cannot be other than the product of compulsion, subtle or otherwise.” Miranda, 384 U.S. at 474, 86 S.Ct. 1602. Finally, even taken on its own terms, the majority’s factual hair-splitting is mistaken. It makes no sense to split hairs and say that maybe, just maybe, Anderson wanted to talk about the murder and not about his drug use because, in fact, the drug use was inextricably intertwined with the murder. It is precisely this kind of hair-splitting that the Supreme Court wanted to avoid when it fashioned the bright-line rule in Miranda. Davis, 512 U.S. at 461, 114 S.Ct. 2350 (noting that the benefit of the bright-line rule is the “clarity and ease of application” that can be applied by officers in the real world without “unduly hampering the gathering of information” by forcing them to make “difficult judgment calls” with a “threat of suppression if they guess wrong”). No guess work was required here.
But under the majority’s interpretation of Miranda and its progeny, every time a suspect unequivocally invokes the right to remain silent, the police can ask follow-up questions to clarify whether he really, really wants to invoke the right and to parse the subject matter — “what specifically do you not want to talk about?” The majority’s holding allows the police to turn the Fifth Amendment into a game of “Twenty Questions,” permitting the police to continue the interrogation and forcing the suspect to take a multiple choice quiz. Such a practice is tantamount to endless re-interrogation.
Where the initial request to stop the questioning is clear, “the police may not create ambiguity in a defendant’s desire by continuing to question him or her about it.” Barrett, 479 U.S. at 535 n. 6, 107 S.Ct. 828 (Brennan, J., concurring). By parsing Anderson’s invocation into specific subjects, the police “faded to honor a decision of a person in custody to cut off questioning, either by refusing to discontinue the interrogation upon request or by persisting in repeated efforts to wear down his resistance and make him change his mind.” Michigan v. Mosley, 423 U.S. 96, 105-06, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). The net result is that such followup questions allow “the authorities through ‘badger[ing]’ or ‘overreaching’ — explicit or subtle, deliberate or unintentional — [to] *1218 wear down the accused and persuade him to incriminate himself.” Smith, 469 U.S. at 98, 105 S.Ct. 490.
Looking at this case through the AED-PA lens of deference does nothing to change my conclusions. The state court’s decision to ignore an unambiguous declaration of the right to remain silent is directly contrary to Miranda. To the extent the question is one of interpretation of Miranda and related Supreme Court precedent, the state court’s interpretation is flatly unreasonable. See Runnels, 421 F.3d at 867. And to characterize Anderson’s statements as ambiguous was certainly an unreasonable finding of fact.
III. The State Court Acted Contrary to Supreme Court Precedent by Using Anderson’s Responses to Re-interrogation to Find a Valid Waiver
The state appellate court attempted to bolster its conclusion about Anderson’s statements by claiming that he waived his right to remain silent in continuing to answer police questions after he stated, “I plead the Fifth”:
By continuing to talk to the police officers, defendant demonstrated a willingness to continue to discuss the case.... Accordingly, while words of invocation were spoken by the defendant, the court concludes that, in any case, he effectively waived the right to remain silent by what followed.
Put another way, the state court suggests that because the officers ignored Anderson’s unequivocal invocation of the Fifth Amendment, their questioning caused him to keep talking, resulting in a waiver of his right to remain silent. This analysis directly contravenes clear Supreme Court precedent, thereby providing another ground upon which to grant the writ under § 2254(d)(1).
Smith mandates that all questioning must immediately cease once the right to remain silent is invoked, and that any subsequent statements by the defendant in response to continued interrogation cannot be used to find a waiver or cast ambiguity on the earlier invocation. The Supreme Court’s somewhat lengthy but crystal clear recitation of this principle bears repeating:
Where nothing about the request for counsel or the circumstances leading up to the request would render it ambiguous, all questioning must cease. In these circumstances, an accused’s subsequent statements are relevant only to the question whether the accused waived the right he had invoked. Invocation and waiver are entirely distinct inquiries, and the two must not be blurred by merging them together....
With respect to the waiver inquiry, we accordingly have emphasized that a valid waiver “cannot be established by showing only that [the accused] responded to further police-initiated custodial interrogation.” Using an accused’s subsequent responses to cast doubt on the adequacy of the initial request itself is even more intolerable. “No authority, and no logic, permits the interrogator to proceed ... on his own terms and as if the defendant had requested nothing, in the hope that the defendant might be induced to say something casting retrospective doubt on his initial statement that he wished to speak through an attorney or not at all.”
Smith, 469 U.S. at 98-99, 105 S.Ct. 490 (internal citations omitted).
The prejudice from Anderson’s confession cannot be soft pedaled, and the error was not harmless. Brecht v. Abrahamson, 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). I would grant the writ of habeas corpus.

. As early as 1955, the Supreme Court recognized that "in popular parlance and even legal literature, the term 'Fifth Amendment' in the context of our time is commonly regarded as being synonymous with the privilege against self-incrimination." Quinn v. United States, 349 U.S. 155, 163, 75 S.Ct. 668, 99 L.Ed. 964 (1955); accord In re Johnny V., 85 Cal.App.3d 120, 149 Cal.Rptr. 180, 184, 188 (1978) (holding that the statement "I'll take the fifth” was an assertion of the Fifth Amendment privilege.)

. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA”), 28 U.S.C. § 2254(d), a writ of habeas corpus may not be granted unless the state court's decision (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

. See Arnold v. Runnels, 421 F.3d 859, 866 (9th Cir.2005) (holding, with respect to a defendant who said that he did not want to talk on tape, that "it is difficult to imagine how much more clearly a layperson ... could have expressed his right to remain silent.”).