**Opinion issued April 22, 2014.**



**In The**

# Court of Appeals

**For The**

# First District of Texas

————————————

## NO. 01-13-00111-CR

————————————

**JOSHUA EDWARD WILLIAMS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 262nd District Court
Harris County, Texas
Trial Court Case No. 1352593**

---

## MEMORANDUM OPINION

A jury found Joshua Edward Williams guilty of aggravated robbery and

assessed punishment at 30 years' confinement.[1] In two issues, Williams contends

---

[1]  TEX. PENAL CODE ANN. § 29.03 (West 2011) (defining aggravated robbery as robbery causing serious bodily injury to another or using or exhibiting a deadly weapon); *but cf.* TEX. PENAL CODE ANN. § 29.02 (West 2011) (defining robbery

that (1) there is insufficient evidence that he committed aggravated robbery and (2) his recorded statement was inadmissible. We affirm.

## Background

Houston Police Department Sergeant M. Dillingham was leaving a restaurant just off a major highway and walking to his unmarked police car when he saw Joshua Williams "rummaging through the trunk" of Dillingham's car. Dillingham testified that he ran across the parking lot toward Williams's car, put his police badge around his neck, and screamed "police." According to Dillingham, Williams turned toward him, closed the trunk, took Dillingham's wallet from inside of the car, and then jumped into a Dodge Charger parked next to Dillingham's car. In response, Dillingham pulled out his gun, held it in a "low-ready position," and approached the driver's side of Williams's car.

Dillingham ordered Williams to put his hands up and to get out of the car. He testified that Williams initially put his hands up but then dropped his hands and picked up what Dillingham believed to be a gun. Williams then backed up his car, nearly hitting Dillingham. Dillingham testified that he feared Williams would shoot or strike him and, based on that fear, he shot at the driver's side of

as "(1) intentionally, knowingly, or recklessly caus[ing] bodily injury to another; or (2) intentionally or knowingly threaten[ing] or plac[ing] another in fear of imminent bodily injury or death.").

2

Williams's car several times. The car sped out of the parking lot, drove into oncoming traffic, hit one car, entered the freeway, and escaped.

While police investigated the crime, Houston Police Department Officer J. Yeoman heard over the police radio that Sergeant Dillingham was involved in a shooting incident involving a black male driving a Dodge Charger. Based on information that he had collected for another ongoing investigation, Yeoman radioed officers at the scene and identified Williams as a possible suspect. Later, an anonymous Crime Stoppers tip indicated that Williams and Chris Wilson were responsible for the robbery. Based on this tip, police compiled two photo-arrays from which Dillingham identified Williams as the person he saw rummaging through his trunk, holding a gun, and recklessly driving the Dodge Charger.

Williams was arrested and charged with aggravated assault of a public servant and aggravated robbery. Williams gave a videotaped statement to police that included several admissions. Williams stated that he was in the car when Dillingham shot at it, that one of the bullets hit his leg, and that the bullet was still in his leg during his interview. Williams refused police offers of medical treatment.

Williams later went to a hospital to receive medical treatment for the gunshot wound. There, he told a trauma nurse that he "was shot while trying to run over [a police] officer." After Williams received medical treatment, but while still in jail awaiting trial, Williams made several phone calls to Chris and April Wilson,

all of which were monitored by police. During those calls, Williams discussed the weakness of the case against him, including the fact that he could not be identified as the person rummaging through Dillingham's trunk.

Before trial, Williams moved to suppress his videotaped statement; the trial court denied his motion. A jury found Williams not guilty of aggravated assault of a public servant but did find him guilty of aggravated robbery and assessed punishment at 30 years' confinement.

Williams timely appealed.

## Sufficiency of the Evidence

In his first issue, Williams contends there is legally insufficient evidence to find him guilty of aggravated robbery. Specifically, Williams contends that there is insufficient evidence that he (1) committed the aggravated robbery or (2) used a deadly weapon in doing so.

### A.    Standard of review

We review Williams's challenge to the sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia,* 443 U.S. 307, 318–20, 99 S. Ct. 2781, 2788–89 (1979). *See Ervin v. State,* 331 S.W.3d 49, 52–56 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (citing *Brooks v. State,* 323 S.W.3d 893, 894–913 (Tex. Crim. App. 2010)). Under the *Jackson* standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to

the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson,* 443 U.S. at 317–19, 99 S. Ct. at 2788–89; *Laster v. State,* 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We consider both direct and circumstantial evidence, and all reasonable inferences that may be drawn from the evidence in making our determination. *Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Evidence is insufficient under four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; or (4) the acts alleged do not constitute the criminal offense charged. *See Jackson,* 443 U.S. at 314, 318 n.11, 320, 99 S. Ct. at 2786, 2789 & n.11; *Laster,* 275 S.W.3d at 518; *Williams v. State,* 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The *Jackson* standard defers to the factfinder to resolve any conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from "basic facts to ultimate facts." *Jackson,* 443 U.S. at 318–19, 99 S. Ct. at 2788–89; *Clayton,* 235 S.W.3d at 778. An appellate court presumes the factfinder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson,* 443 U.S. at 326, 99 S. Ct. at 2793. If an appellate court finds the evidence insufficient under this standard, it

must reverse the judgment and enter an order of acquittal. *See Tibbs v. Florida,* 457 U.S. 31, 41, 102 S. Ct. 2211, 2218 (1982).

**B.      Sufficient evidence Williams committed aggravated robbery**

A person commits robbery if, in the course of committing theft with the intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL CODE ANN. § 29.02(a)(1)–(2) (West 2011). A person commits aggravated robbery when he commits robbery and uses or exhibits a deadly weapon. *See* TEX. PENAL CODE. ANN. § 29.03(a)(2) .

Williams argues that reasonable doubt exists about whether he was reliably identified as the person who broke into Dillingham's car. He argues that, "even in the best of circumstances, eyewitness identifications are dangerous and fraught with uncertainty." He contends that Dillingham's identification of him should be disregarded because it was "irretrievably tainted" in that it contradicts other witnesses' testimony and is "self-contradictory" and tainted by "outside influence and self-preservation." Specifically, Dillingham challenges Houston Police Officer J. Yeoman's involvement in the investigation and argues that without Yeoman's assistance, Dillingham would have been unable to identify him as the robbery suspect in a photo-array.

6

Officer Yeoman, a member of the Houston Police Department's auto theft division, testified that he heard over the police radio that Sergeant Dillingham was involved in a shooting incident with a black male driving a Dodge Charger. Yeoman had been investigating Williams's possible role in other vehicle thefts and knew that Williams's girlfriend, April Wilson, owned a Dodge Charger. Yeoman radioed officers at the scene and identified Williams as a possible suspect. The day after the robbery, Dillingham identified Williams in a photo-array as the person he saw rummaging in his trunk and holding a gun in the Dodge Charger.

But Williams did not object to the out-of-court identification procedure used in the photo-array as "impermissibly suggestive" or argue that it "gave rise to a very substantial likelihood of irreparable misidentification." *Barley v. State*, 906 S.W.2d 27, 33 (Tex. Crim. App. 1995) (citing *Simmons v. United States,* 390 U.S. 377, 88 S. Ct. 967 (1968)). Williams does not contend that Dillingham's identification was inadmissible or even discuss the circumstances of the photo-array. Instead, Williams contends that his identification was tainted because Officer Yeoman "fed" police his identifying information, including his name, a vehicle description, and the vehicle's license plate number. While Yeoman's actions may have contributed to Williams's being considered a suspect by the police, Williams does not show how that—alone—created an impermissibly suggestive procedure with a substantial likelihood of misidentification.

Williams also argues that Dillingham's testimony failed to satisfy the five factors identified in *Perry v. New Hampshire*, ⸺ U.S. ⸺, 132 S. Ct. 716, 727–28 (2012), "for evaluating the accuracy of any eyewitness identification." But the *Perry* factors do not apply to every eyewitness identification; they only apply when "improper law enforcement activity is involved" in making the identification. *Id.* at 721. Trial courts are not required to evaluate the *Perry* factors to determine the reliability of eyewitness testimony in the absence of suggestive circumstances. *Id.* (listing examples of suggestive circumstances, including "rigging identification procedures . . . at a lineup, showup, or photograph array."); *cf. Romero v. State*, 406 S.W.3d 695, 698 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (refusing to apply *Perry* to eyewitness identification challenge not involving suggestive circumstances). Accordingly, we reject Williams's argument that we must apply the *Perry* factors to Dillingham's identification of Williams as the robbery.

Although Williams denied that he was the person rummaging through Dillingham's trunk, there was ample evidence identifying Williams—even without Dillingham's testimony. Specifically, there is undisputed evidence that Williams was at the scene and fled from the scene. Williams also made incriminating statements to his girlfriend and to a nurse who treated his gunshot wound.

Being at the scene of a crime is evidence of guilt. *See Wolfe v. State*, 917 S.W.2d 270, 275 (Tex. Crim. App. 1996) (upholding conviction when defendant

8

was seen near scene before and after crime); *cf. Palomo v. State*, 352 S.W.3d 87, 90 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (holding sufficient evidence of murder when defendant was seen at crime scene). In his videotaped statement to police, Williams admitted that he was in the car parked next to Dillingham. He admitted that his girlfriend, April Wilson, owned the Dodge Charger in which they fled from the scene. Williams also confirmed that he was in the car when Dillingham shot at it and that Dillingham's bullet hit his leg. Williams said that bullet was still in his leg during his interview but that he did not need any medical treatment. Williams also admitted that he fled from the scene of the robbery in the Dodge Charger and that the Charger hit another car while trying to escape. *See Foster v. State*, 779 S.W.2d 845, 859 (Tex. Crim. App. 1989) ("Evidence of flight is admissible as a circumstance from which an inference of guilt may be drawn."). Thus, in his statement, Williams both placed himself at the scene and admitted that he fled the scene. These two admissions are circumstantial evidence of guilt.

Williams made more incriminating statements after the police interview and he does not challenge their admissibility on appeal. First, the trauma nurse who treated Williams's gunshot wound testified that Williams reported that he "was shot while he was trying to run over [a police] officer." Second, Williams made incriminating statements to Chris Wilson and his girlfriend, April Wilson, during monitored phone calls while in jail. Houston Police Department Sergeant W.

Elsbury, who monitored Williams's mail and phone calls while he was in jail, testified that Williams told Chris Wilson that the case against him was "weak . . . because the person who would have identified the male breaking into the trunk of the vehicle couldn't have seen his face." Williams told April Wilson that police had not located her Dodge Charger and that they would not have a case against him without it. The combination of Williams's statements to the nurse, Chris, and his girlfriend, as well as his undisputed presence at the scene and flight are sufficient for a jury to infer Williams's guilt. *Cf. Temple v. State*, 390 S.W.3d 341, 359–60 (Tex. Crim. App. 2013) ("[I]t is not necessary that every fact and circumstance point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances.").

We defer to the jury's determination regarding the weight evidence should be given when it depends on a witness's credibility or demeanor. *Williams*, 235 S.W.3d at 750. We presume the jury reconciled any inconsistencies in favor of the conviction. *Clayton*, 235 S.W.3d at 778. The jury could have relied upon Dillingham's in-court identification of Williams, Dillingham's description of the vehicle, and Williams's own incriminating statements placing himself at the scene and in the Dodge Charger to identify Williams as the robber. *Cf. Aguilar*, 468 S.W.2d at 77 (holding one eyewitness's testimony sufficient to uphold conviction).

We conclude that there is sufficient evidence to support the jury's conclusion that Williams robbed Dillingham's vehicle.

## C.      Sufficient evidence Williams used a deadly weapon

Williams also argues that there is insufficient evidence that he used a deadly weapon. Specifically, he argues that there is insufficient evidence that he used his car as a deadly weapon and that there was conflicting and unreliable testimony about whether he actually used or exhibited a firearm.

### 1.      Evidence of motor vehicle used as deadly weapon

Evidence is legally sufficient to sustain a deadly weapon finding if it demonstrates (1) the object meets the statutory definition of a dangerous weapon, (2) the deadly weapon was used or exhibited during a felony, and (3) other people were put in actual danger. *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). A "deadly weapon" is defined as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."[2] *Sullivan v. State*, 248 S.W.3d 746, 751 (Tex. App.—Houston [1st Dist.] 2008, no pet.). A vehicle may be used as a deadly weapon. *See Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009). When reviewing the sufficiency of the evidence after a jury determines that a vehicle was used as a deadly weapon, we apply a two-part analysis: we first consider the manner in which the defendant used the vehicle in

---

[2]      TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (West Supp. 2013).

the felony; second, we consider whether the way that he used the vehicle could have caused death or serious bodily injury. *Id*.

When evaluating the manner in which the vehicle was used, we consider several factors including intoxication, speeding, disregarding traffic signs or signals, driving erratically, and failing to control the vehicle. *See id*. at 255–56.

Williams contends, as a defensive claim, that "it was clear that [he] was fleeing" from the scene because Dillingham was shooting at him. In fleeing from the scene, Williams argues that the vehicle was not used to "attempt or threaten bodily injury or death" to Dillingham.

The jury heard ample evidence regarding the manner in which Williams used the car. Dillingham testified that Williams used his car to "brush" him out of the way, and he had to move quickly or he "would have been ran over" and crushed by Williams's car. Kimberly Davis was with Dillingham when the incident occurred and testified that Williams's car almost hit Dillingham. According to Davis, Dillingham showed his police badge and told Williams to stop, but Williams jumped into the Dodge Charger. Davis also said that Williams drove "crazy" and at a high rate of speed, pulled into oncoming traffic, hit another car, and then entered the freeway.

Garrett Hybert, a restaurant employee, saw the incident and testified that Williams's tires "screech[ed]" loudly as Williams "peel[ed]" out of the parking lot.

12

Hybert testified that, when Williams pulled out of the parking lot, he drove in a "direct path" toward Dillingham. According to Hybert, if Dillingham had not "dodged" Willaims's car, "he would have got[ten] clipped." Hybert also saw Williams's car drive into oncoming traffic and hit another car.

Based on this evidence, a rational jury could find that Williams drove erratically, disregarded traffic laws, and hit another car. *See Sierra*, 280 S.W.3d at 256 (holding evidence sufficient that defendant drove recklessly when he sped, failed to maintain control of vehicle, and hit another car).

We next consider the second prong of the *Sierra* test—whether there is sufficient evidence that Williams used his car in a manner capable of causing death or serious bodily injury. *Sierra*, 280 S.W.3d at 255. A car is capable of causing death or serious bodily injury if there is "evidence that others were endangered." *Id*. at 254 (quoting *Mann v. State*, 13 S.W.3d 89, 92 (Tex. App.—Austin 2000), *aff'd*, 58 S.W.3d 132 (Tex. Crim. App. 2001)). No specific intent to use a car as a deadly weapon need be shown. *Drichas*, 175 S.W.3d at 797. Nor must a car "intentionally strike another vehicle to justify a deadly weapon finding." *Id*. at 799. However, "a hypothetical potential for danger if others had been present," is insufficient, without more, to establish a deadly weapon finding. *Sierra*, 280 S.W.3d at 254. Actual danger is required. *Drichas*, 175 S.W.3d at 798.

There was ample evidence from which the jury could find that Williams drove his car in a manner capable of causing death or serious bodily injury and that he endangered others. Dillingham, Davis and Hybert all testified that Williams drove at a high speed directly toward Dillingham and that Dillingham had to jump out of the way to avoid being hit. Furthermore, they all testified that Williams drove directly into oncoming traffic and hit another car.

Based on this evidence, a rational jury could find that Williams's reckless driving threatened to cause serious bodily injury to Dillingham and other motorists; there was more than a hypothetical potential for danger. *See Drichas*, 175 S.W.3d at 798 (holding defendant's driving posed real threat of danger when he "drove on the wrong side of the highway."). Accordingly, we conclude that there is sufficient evidence that Williams used his car as a deadly weapon.[3]

The jury heard all of this evidence, including the inconsistencies that Williams highlighted, and still found Williams guilty of aggravated robbery. We conclude that the evidence, viewed in the light most favorable to the verdict, is legally sufficient evidence to permit a reasonable jury to find Williams guilty of aggravated robbery. *See Bradley v. State,* 359 S.W.3d 912, 917 (Tex. App.— Houston [14th Dist.] pet. ref'd) (holding complainant's testimony covering all

---

[3]    We do not reach Williams's argument regarding the use or exhibition of a firearm because we conclude that there is sufficient evidence that he used his car as a deadly weapon.

elements of charged offense was legally sufficient to support conviction for aggravated robbery).

We overrule Williams's first issue.

## Motion to Suppress

In his second issue, Williams contends that his videotaped statement was inadmissible. Specifically, he contends that police violated his rights under the United States and Texas constitutions by continuing to question him after he had invoked his right to an attorney.

## A.    Standard of review

When a defendant challenges a trial court's denial of a motion to suppress a statement, we review the trial court's ruling for an abuse of discretion. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We grant almost total deference to a trial court's determinations of historical facts. *Id*. When a criminal defendant challenges the admissibility of a videotaped statement, we defer to the trial court's determination of historical facts in the video. *Tucker v. State*, 369 S.W.3d 179, 185 (Tex. Crim. App. 2012). We use the same deferential standard for mixed questions of law and fact that require evaluation of credibility and demeanor. *Id*.; *Ervin*, 333 S.W.3d at 203. However, we review de novo all other mixed questions of law and fact that do not fall within that category. *Id*. When the trial court enters no findings of facts, we view the evidence in the light most

favorable to the trial court's ruling to deny the motion to suppress. *Id.* We imply all necessary findings of fact that are supported by the record. *Turrubiate*, 399 S.W.3d at 150 (citing *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006)). We "view the video in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings that support the denial of Appellant's motion to suppress. If the video evidence does not support the trial court's conclusion, then the court of appeals should reverse." *Tucker*, 369 S.W.3d at 185. And, we must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g); *Ervin*, 333 S.W.3d at 203.

**B.    Williams did not invoke his right to counsel**

Williams contends that police infringed upon his Sixth Amendment right to counsel. A criminal defendant's Sixth Amendment right to counsel applies during all "critical stages" of the proceedings. *U.S. v. Wade*, 388 U.S. 218, 227–28, 87 S. Ct. 1926, 1932–33 (1967). Williams, however, did not raise this issue in the trial court. Williams also cites no legal authority or evidence to suggest that his Sixth Amendment right to counsel during all "critical" stages of trial was violated by the questioning. U.S. CONST. amend. VI; *see Montejo v. Louisiana*, 556 U.S. 778, 786, 129 S. Ct. 2079 (2009) (emphasizing that "[the] Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of

16

the criminal proceedings.") (citing *Wade*, 388 U.S. at 227–28, 87 S. Ct. at 1932–33).[4] We conclude, therefore, that Williams waived his right to appeal this issue. *See* TEX. R. APP. P. 33.1.

Williams also argues that police violated his right to counsel under the Fifth Amendment to the United States Constitution and article 1, section 10 of the Texas Constitution.[5] The Fifth and Fourteenth Amendments to the United States Constitution provide a defendant the right to counsel during a custodial interrogation. U.S. CONST. amends. V, XIV; *Miranda*, 384 U.S. at 444, 86 S. Ct. at

---

[4] The only authority he cites, *McNeil v. Wisconsin*, 501 U.S. 171, 176, 111 S. Ct. 2204, 2208 (1991), is not applicable because prosecution had not begun when Williams alleges that he invoked his right to counsel. As the Court explained in *McNeil*, the Sixth Amendment right is offense specific. *Id*. at 175. It cannot be invoked once for all future prosecutions because it does not attach until a prosecution is commenced, that is, "'at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Id*. (citation omitted). The constitutional amendment at issue here is the Fifth Amendment. *See Miranda v. Arizona*, 384 U.S. 436, 467, 86 S. Ct. 1602 (1966) (holding Fifth Amendment right to counsel "serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves."), *and Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008) (same).

[5] Article 1, section 10 of the Texas Constitution provides no additional protection to the Fifth Amendment to the United States Constitution. *See* TEX. CONST. art. 1,§ 10; *see also Olson v. State*, 484 S.W.2d 756, 762 (Tex. Crim. App. 1969) ("[W]e have found no historical evidence . . . that the framers of our state constitution meant, by choice of language, for Article 1, section 10, to be more encompassing than, 'witness against himself,' as used in the federal constitution . . . .") (citation omitted). We, therefore, address Williams's complaint that his right to counsel was violated solely under the Fifth Amendment to the United States Constitution.

1612. In *Miranda*, the United States Supreme Court interpreted this right to include the right to remain silent during a police interrogation, to have an attorney present during custodial interrogation, and to be informed of these rights before any custodial interrogation. 384 U.S. at 478–79, 86 S. Ct. at 1630. Article 38.22 of the Texas Code of Criminal Procedure statutorily incorporates these rights. *See* Tex. Code Crim. Proc. Ann. art. 38.22 (West Supp. 2013); *see also Ervin*, 333 S.W.3d at 204. To benefit from these rights, a defendant must affirmatively and clearly invoke them: "An invocation must be clear and unambiguous; the mere mention of the word 'attorney' or 'lawyer' without more, does not automatically invoke the right to counsel." *Dinkins v. State*, 894 S.W.2d 330, 351 (Tex. Crim. App. 1995). While the defendant need not say "magic words," his invocation must, under all of the facts and circumstances, be construed as invoking his right to counsel. *Russell v. State*, 727 S.W.2d 573, 575 (Tex. Crim. App. 1987).

When a defendant alleges that he invoked his right to counsel, we review the totality of the circumstances surrounding the interrogation and alleged invocation to determine whether the defendant actually invoked his right. *Dinkins*, 894 S.W.2d at 351; *Reed v. State*, 227 S.W.3d 111, 116 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). If a defendant clearly invokes his right to counsel, law enforcement must cease questioning related to that case. *Connecticut v. Barrett*, 479 U.S. 523, 528, 107 S. Ct. 828, 832 (1987); *State v. Gobert*, 275 S.W.3d 888,

18

893 (Tex. Crim. App. 2009). When law enforcement fails to comply with these requirements, the State may not use the statement during the prosecution of its case. *See Ervin*, 333 S.W.3d at 204; *see also Jones v. State*, 119 S.W.3d 766, 772 (Tex. Crim. App. 2003). If a suspect is informed of his rights, however, his statement is admissible if he waives his rights by speaking "freely and voluntarily without any compelling influences." *Miranda*, 384 U.S. at 478, 86 S. Ct. at 1630; *see* TEX. CODE CRIM. PROC. ANN. art. 38.22.

After Williams was arrested, police read him his *Miranda* rights and transported him to a homicide division interview room. Before questioning Williams, Officer R. Martinez again read Williams his rights and Williams affirmed that he understood those rights. Martinez also asked whether, after hearing his rights for a second time, Williams would agree "to go ahead and talk to us." Williams replied: "Yeah, but if questions getting tricky then . . . I . . . need my lawyer to come talk for me." Martinez clarified that the questions would not be "tricky" and told Williams that he would question him about his role in the robbery. Williams then responded to questions for more than 30 minutes.

The trial court reviewed Williams's statement, including Williams's reference to a lawyer, and found that the statement was "not an unambiguous or unequivocal request for counsel." The trial court also found that after Williams

referenced a lawyer, he waived his rights because he continued to answer questions.

Williams cites *Gobert* and *Tucker* to support his contention that "any reasonable officer" would interpret his reference to a lawyer as a "clear invocation of a right to counsel." Simply because a suspect's reference to an attorney is conditional "does not mean it is equivocal, ambiguous, or otherwise unclear." *Gobert*, 275 S.W.3d at 893. Here, Williams stated that "if the questions" got tricky that he would "need my lawyer to come talk for me." Simply mentioning the word lawyer, however, is not enough for a reasonable police officer to conclude that a suspect has invoked his right to counsel. *Compare Reed*, 227 S.W.3d at 116 (asking whether "he could get a lawyer if he wanted one" insufficient to invoke right), *with Gobert*, 275 S.W.3d at 892–93 (stating "I don't want to give up any right" clearly invoked right to counsel); *see also In re H.V.*, 252 S.W.3d 319, 325 (Tex. 2008) (noting defendant does not invoke right to counsel by saying, "'Maybe I should talk to a lawyer,' 'I might want to talk to a lawyer,' 'I think I need a lawyer,' 'Do you think I need an attorney here?,' or 'I can't afford a lawyer but is there any way I can get one?'") (citations omitted).

Williams's statement is insufficient to invoke his right to counsel because he clearly stated that he would wait until questions got "tricky" to invoke that right. Williams expressly confirmed that he understood his rights, only conditionally

referenced speaking to a lawyer, and then answered questions for 30 minutes. We conclude that Williams's statement was insufficient to invoke his right to counsel.

Accordingly, we hold that the trial court did not abuse its discretion in denying Williams's motion to suppress.

We overrule Williams's second issue.

## Conclusion

Having overruled both of Williams's issues, we affirm.


Harvey Brown
Justice


Panel consists of Justices Keyes, Bland, and Brown.

Do Not Publish. TEX. R. APP. P. 47.2(b).