

## SUPREME COURT OF MISSOURI
## en banc

|                          |   |                                      |
|--------------------------|---|--------------------------------------|
|                          | ) | *Opinion issued December 6, 2016*    |
| STATE OF MISSOURI,       | ) |                                      |
|                          | ) |                                      |
| Appellant,               | ) |                                      |
|                          | ) |                                      |
| v.                       | ) | No. SC95613                          |
|                          | ) |                                      |
| DAVID K. HOLMAN,         | ) |                                      |
|                          | ) |                                      |
| Respondent.              | ) |                                      |

### APPEAL FROM CIRCUIT COURT OF LAWRENCE COUNTY
Honorable Jack A.L. Goodman, Judge

The state brings this interlocutory appeal, pursuant to section 547.200.1(3), RSMo 2000,[1] after the trial court sustained David K. Holman's (hereinafter, "Defendant") motion to suppress statements he made to police after his arrest. The state claims that Defendant's statements were suppressed improperly because Defendant failed to unequivocally assert his Fifth Amendment right to counsel.

This Court holds that Defendant's Fifth Amendment rights were not violated. Accordingly, the trial court's judgment is reversed, and the case is remanded.

### Factual and Procedural Background

In determining whether to sustain Defendant's motion to suppress, the trial court took into consideration the stipulated facts as presented by the attorneys in the case, two

---

[1] All statutory references herein are to RSMo (2000).

depositions, and a police report. There was no live testimony. The facts as presented demonstrated:

In the early morning hours of December 10, 2013, it was asserted that RaDonna Roland (hereinafter, "Wife") shot Defendant in the back of the arm. Defendant fatally shot Wife and thereafter, called 911.

Deputies Ryan Devost (hereinafter, "Deputy Devost") and Michael Thorn (hereinafter, "Deputy Thorn") were dispatched to Defendant's home. Upon arrival, the deputies knocked on the door, and Defendant told them to come inside. Inside, Deputy Devost performed a security sweep of the premises while Deputy Thorn attended to Wife. Deputy Devost handcuffed Defendant and took him to the patrol car.

After paramedics arrived, they first attempted to treat Wife. Deputy Thorn moved Defendant into the ambulance so that he could receive treatment. Defendant was emotional, upset about Wife, and repeating that he could not believe he shot her. Deputy Devost informed Defendant of his *Miranda*[2] rights. Defendant continued speaking to Deputy Devost, stating that he could not believe there was not more being done for Wife, that he could not believe Wife shot him, and explaining that he should not have shot Wife but rather should have run away. Deputy Devost requested Defendant sign a consent to search form to search his home. Defendant responded, "I ain't signing shit without my attorney."

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966).

2

Other detectives arrived at the scene. Deputy Devost informed them that Defendant was "in custody. He's been read *Miranda*. He's refused to sign a search without his attorney." Deputy Devost then departed the scene. Defendant was transported to the hospital for treatment. After being discharged from the hospital, Defendant was taken to the Lawrence County jail.

The next morning, Detective Linda McElroy (hereinafter, "Detective McElroy") questioned Defendant. Detective McElroy read Defendant his *Miranda* rights and asked if he understood them. Defendant indicated he understood his rights, and he spoke with Detective McElroy. Subsequently, Defendant was charged with first-degree murder, section 565.020, and armed criminal action, section 571.015.

Prior to trial, Defendant brought this motion to suppress statements he made after being read his *Miranda* rights. The trial court sustained his motion, concluding that after Defendant stated that "I ain't signing shit without my attorney," he had invoked his right to counsel. The state appeals.

## Standard of Review

This Court will reverse a trial court's ruling on a motion to suppress only if it is clearly erroneous. *State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc 2007). To find clear error, this Court must be "left with a definite and firm belief a mistake has been made." *State v. Bell*, 488 S.W.3d 228, 238 (Mo. App. E.D. 2016) (quoting *State v. Haldiman*, 106 S.W.3d 529, 533 (Mo. App. W.D. 2003)). Whether conduct violates the Fifth Amendment is a question of law that this Court reviews *de novo*. *State v. Lammers*, 479 S.W.3d 624, 630 (Mo. banc 2016).

3

**Discussion**

The state asserts that the trial court erred in sustaining Defendant's motion to suppress the statements he made to the police. The state argues that Defendant did not unequivocally assert his Fifth Amendment right to counsel when he refused to sign the consent to search form. Further, the state maintains that other than refusing to sign the consent to search form, Defendant communicated with the police and never invoked his right to counsel.

The clear issue in this case is whether Defendant invoked his Fifth Amendment right to counsel. This Court must determine whether, after being Mirandized, a suspect can graft a refusal to sign a consent to search onto his Fifth Amendment right to have an attorney present during questioning.

"*Miranda* rights inform a criminal defendant of his constitutional rights during the interrogation process." *State v. Collings*, 450 S.W.3d 741, 753 (Mo. banc 2014) (quoting *State v. Johnson*, 284 S.W.3d 561, 582 (Mo. banc 2009)). "[A]lthough *Miranda* warnings must precede 'custodial interrogation,' a request for consent to search is not an 'interrogation' because giving consent to search is not a self-incriminating statement under the Fifth Amendment." *State v. Metz*, 43 S.W.3d 374, 382 (Mo. App. W.D. 2001)[3]; *see also State v. Baldwin*, 290 S.W.3d 139, 144 (Mo. App. W.D. 2009) (stating that Missouri courts "have found that requesting consent to search does not constitute interrogation

---

[3] In his motion to suppress, Metz alleged error in admitting evidence seized during a consent search of his residence. *Metz*, 43 S.W.3d at 381. "Metz had been placed under arrest for at least one outstanding warrant at the time he consented to the search, but he was not advised of his *Miranda* rights prior to executing the consent-to-search form." *Id.*

4

because a statement of consent is not an incriminating response."); *United States v. Payne,* 119 F.3d 637, 643–44 (8th Cir. 1997) ("*Miranda* rights affect the integrity of the truth finding process in a criminal trial, but Fourth Amendment rights go to the right of privacy and to be left alone. As the purposes of the two protections are different, it would be unreasonable to require *Miranda* warnings before a request for permission to search.").[4]

A criminal suspect is entitled to *Miranda* warnings once the suspect is subjected to a custodial interrogation. "A custodial interrogation *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966) occurs only when the suspect is formally arrested or is subjected to arrest-like restraints." *Lammers*, 479 S.W.3d at 631-32. "Statements obtained during a custodial interrogation not preceded by *Miranda* warnings are subject to suppression at trial." *State v. Stover*, 388 S.W.3d 138, 155 (Mo. banc 2012).

Once a suspect is given *Miranda* warnings, and if that suspect "indicates in any manner, at any time prior to or during questioning, that he [or she] wishes to remain silent, the interrogation must cease." *Miranda*, 384 U.S. at 473-74. Similarly, as in this case,

---

[4] The Seventh Circuit addressed a similar factual scenario in *United States v. McClellan,* 165 F.3d 535, 539 (7th Cir. 1999). In *McClellan*, the defendant was arrested and read *Miranda* warnings. The police ceased their questioning. *Id*. Yet, police continued speaking to the defendant for ten to fifteen minutes, and they requested the defendant to consent to search his vehicle and motel room and indicated if the defendant allowed them to search, there could be a reduced sentence due to his cooperation. *Id*. at 540. The defendant gave a written consent to search, and the police recovered 200 pounds of marijuana from the defendant's vehicle and $35,400 from the defendant's hotel room. *Id*. On appeal, the defendant argued the marijuana should have been suppressed because it was obtained in violation of his Fifth Amendment right to counsel because he invoked his *Miranda* rights and was not provided an attorney. *Id*. at 544. The Seventh Circuit disagreed, reaffirming that "'consent to search is not an interrogation within the meaning of *Miranda*' because the giving of consent is not a self-incriminating statement." *Id*. (quoting *United States v. Shlater*, 85 F.3d 1251, 1256 (7th Cir. 1996)).

when a suspect claims to have invoked his or her Fifth Amendment right to counsel, the police must suspend all interrogation and may not reinitiate questioning unless counsel is present. *Davis v. United States*, 512 U.S. 452, 459, 114 S. Ct. 2350, 2355, 129 L. Ed. 2d 362 (1994); *see also Edwards v. Arizona,* 451 U.S. 477, 484-85 (1981).

To successfully invoke the right to counsel, the suspect's desire to have an attorney present during his or her custodial interrogation must be sufficiently clear so that a reasonable police officer would understand that the suspect is invoking his or her right to have an attorney present during the interrogation. *Davis*, 512 U.S. at 459. "If the [suspect's] statement fails to meet the requisite level of clarity for the police officers to understand it to be a request for an attorney, the officers are not required to stop questioning the suspect." *State v. Harris*, 305 S.W.3d 482, 485 (Mo. App. E.D. 2010). When the suspect makes "an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not [the suspect] actually wants an attorney." *Davis*, 512 U.S. at 461.

At no point in time did Defendant seek to terminate questioning by the police nor did he clearly state that he wanted an attorney. Deputy Devost advised Defendant of his *Miranda* rights. Defendant indicated he understood his rights. After indicating he understood his *Miranda* rights, Defendant continued speaking to Deputy Devost. Deputy Devost responded to Defendant's inquiry regarding Wife and the procedure the police were following. Deputy Devost explained they needed to process the scene and, to do that, they needed Defendant to sign a consent to search form. In response, Defendant stated, "I ain't signing shit without my attorney," clearly indicating that he would not sign that form.

6

Deputy Devost told other officers that Defendant would not sign the consent to search form. Deputy Devost then left Defendant and departed the scene. Deputy Devost never questioned Defendant. Based on the circumstances here, a reasonable police officer would not have understood Defendant's statement refusing to sign the consent to search form to be an invocation of his Fifth Amendment right to counsel.

The next day, Detective McElroy sought to interrogate Defendant after again reading Defendant his *Miranda* rights. Defendant again indicated his willingness to speak with Detective McElroy. Because Defendant did not invoke his right to counsel clearly and unequivocally after being read his *Miranda* rights by Deputy Devost or Detective MCElroy, Detective McElroy's interrogation of Defendant was proper. *See Davis*, 512 U.S. at 461. Defendant never invoked his Fifth Amendment right to counsel. Accordingly, the trial court erred in sustaining his motion to suppress.

However, assuming *arguendo*, Defendant partially invoked his Fifth Amendment rights by saying, "I ain't signing shit without my attorney," in response to a request to search his home, his right to counsel still was not violated. The mere utterance of the magic word "attorney" in response to a request to search his home was not a clear and unequivocal invocation of his Fifth Amendment right to counsel in all instances. It is unequivocal that Defendant stated he would not sign anything without the presence of an attorney.[5] However, Defendant did not attempt to assert his Fifth Amendment right to counsel in any context.

---

[5] Defendant was never presented with a written waiver of his *Miranda* rights to sign. The only document Defendant was requested to sign was the consent to search form.

The United States Supreme Court recognized that a suspect may partially invoke the rights to remain silent and to counsel. *Connecticut v. Barrett,* 479 U.S. 523, 529–30, 107 S. Ct. 828, 93 L. Ed. 2d 920 (1987). In *Barrett*, the suspect indicated he understood his *Miranda* rights, and stated he would not make a written statement without his attorney, but he had "no problem" speaking with the police. *Id*. at 525-26. While the suspect spoke with the police, he confessed. *Id.* The suspect attempted to suppress his confession at trial, asserting he had invoked his right to counsel. *Id.* at 526.

In its opinion, the Supreme Court reiterated that the fundamental purpose of *Miranda* was "to assure that *the individual's right to choose* between speech and silence remains unfettered throughout the interrogation process." *Id.* at 528 (quoting *Miranda,* 384 U.S. at 469 (emphasis added)). In furtherance of this purpose, "the *Miranda* Court adopted prophylactic rules designed to insulate the exercise of Fifth Amendment rights from the government 'compulsion, subtle or otherwise,' that 'operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked.'" *Id*. (quoting *Miranda,* 384 U.S. at 474). The Supreme Court recognized that prohibiting police from questioning a suspect after a suspect invokes the right to counsel is intended to prevent police coercion. *Id.*

Yet, in *Barrett*, the suspect's stated intention was that he would speak with the police but not make a written statement, and this intention was respected by the police. *Id*. at 529. The Supreme Court reasoned that to conclude the suspect "invoked his right to counsel for all purposes requires not a broad interpretation of an ambiguous statement, but a disregard of the ordinary meaning of [the suspect's] statement." *Id*. at 529-30. Further, the fact that

8

a suspect's decision to request an attorney only for the purpose of making a written statement may seem illogical is irrelevant as the Supreme Court never "embraced the theory that a defendant's ignorance of the full consequences of his decisions vitiates their voluntariness." *Id*. at 530. *See also United States v. Boyer*, 914 F.2d 144, 146 (8th Cir. 1990) (finding statements admissible when made outside the context for the request for counsel in a limited invocation circumstance); *State v. Hunter*, 840 S.W.2d 850, 870 (Mo. banc 1992) (finding "an invocation of a right to counsel which is by its terms limited in some respect does not foreclose further police questioning so long as police honor the limitation").

In this case, Defendant never, at any time, clearly invoked his right to counsel. Defendant strongly stated he would not sign a consent to search his residence without an attorney. Defendant never said anything about invoking his *Miranda* rights or wanting to have counsel present. A reasonable police officer could have concluded that Defendant was not indicating he was unwilling to speak to officers, merely that he was unwilling to give written consent for them to search his home without first consulting with counsel.

Accordingly, this is not a case wherein the police failed to honor a custodial suspect's partial invocation of his right to counsel. Here, the police never spoke with Defendant about the search of his home after Defendant refused to sign the consent to search form by stating he would not sign that form without his attorney; Defendant did not invoke his right to counsel for any other purpose. Accordingly, Detective McElroy was free to provide Defendant a second reading of his *Miranda* rights and then speak with him

after he waived those rights for a second time.  Defendant agreed to speak with Detective McElroy.  Defendant's Fifth Amendment rights were not violated.

**Conclusion**

In this case, Defendant failed to invoke his *Miranda* rights clearly and unequivocally.  Further, assuming Defendant partially invoked his right to counsel, there was no Fifth Amendment violation when the police questioned him after Defendant refused to sign a consent to search form.  The trial court erroneously sustained Defendant's motion to suppress.  The trial court's judgment is reversed, and the case is remanded.

_____
GEORGE W. DRAPER III, JUDGE

Breckenridge, C.J., Fischer, Stith,
Wilson and Russell, JJ., concur.

10