DON E. BURRELL, J.
The State appeals the trial court's order suppressing statements Matthew M. Rumbaugh ("Defendant") made on separate occasions to a sheriff's detective and the sheriff regarding two murders committed in Laclede County in July 2014. See 547.200.1(3).[1]
The State's first point claims the trial court erred in suppressing Defendant's statements to the detective
because Defendant did not unequivocally assert his Fifth Amendment right to counsel in that: (1) Defendant's anticipatory invocation with [a particular sheriff's deputy] was ineffective; and (2) Defendant told [the detective] only that he "maybe" should get an attorney, which is not a clear and unequivocal request for an attorney.
The State's second point claims that the statements Defendant made to the sheriff should not have been suppressed
because: (1) Defendant did not unequivocally assert his Fifth Amendment right to counsel, in that Defendant stated only that he "maybe" should get an attorney; and because (2) even if Defendant had unequivocally asserted his right to counsel, he reinitiated a conversation regarding the investigation in that he asked to speak with [the sheriff] and he volunteered information about the investigation before any questioning by [the sheriff].
Applicable Principles of Review and Governing Law
"At a motion to suppress hearing, the state bears both the burden of producing evidence and the risk of nonpersuasion to show by a preponderance of the evidence that the motion to suppress should be overruled." State v. Collings , 450 S.W.3d 741, 753 (Mo. banc 2014) (quotations omitted). "On appeal, the appellant, not the respondent, has the burden of showing erroneous action on the part of the trial court." State v. Stone , 430 S.W.3d 288, 290 (Mo. App. S.D. 2014) (quotation omitted). We "will reverse a trial court's ruling on a motion to suppress only if it is *495 clearly erroneous." State v. Holman , 502 S.W.3d 621, 624 (Mo. banc 2016).
"In reviewing the trial court's ruling on a motion to suppress, the facts and any reasonable inferences arising from the facts are to be stated most favorably to the order challenged on appeal. We will disregard any evidence that contradicts the order." State v. Kinkead , 983 S.W.2d 518, 519 (Mo. banc 1998) (internal citation omitted). "Where, as here, the trial court makes no findings of fact in ruling on the motion to suppress, we presume the trial court found all facts in accordance with its ruling." State v. Selvy , 462 S.W.3d 756, 764 (Mo. App. E.D. 2015).
Questions of law, however, are reviewed de novo. State v. Gaw , 285 S.W.3d 318, 320 (Mo. banc 2009). "The determination of whether a suspect invoked his Fifth Amendment right to counsel is a question of law, and we need not defer to the trial court's conclusion on such questions." State v. Benedict , 495 S.W.3d 185, 194 (Mo. App. E.D. 2016).
Evidence and Procedural History
In keeping with our standard of review, see Kinkead , 983 S.W.2d at 519, the following is a summary of the relevant evidence presented at the July 2017 hearing on Defendant's motion to suppress ("the hearing").
"[I]n the early morning hours" of July 8, 2014, law enforcement officials were dispatched to "a shooting out on Atlanta Road" involving two male victims ("Victim 1" and, a minor, "Victim 2"). Defendant was identified as a suspect in the shooting. That same morning, Sheriff Wayne Merritt ("Sheriff") located Defendant sleeping in a bed at Defendant's son's residence. Sheriff woke Defendant, and Defendant "agree[d] to go with Sheriff" to the Lebanon Police Department.
After Defendant was transported to the police department, Laclede County Sheriff's Corporal Steven Price ("Corporal Price") contacted Defendant later that morning and asked Defendant to consent to a search of his vehicle and the house in which he was found. Corporal Price did not recall advising Defendant of his Miranda[2] rights, and he was not sure whether a Miranda warning was included on the consent form Corporal Price presented to Defendant. Defendant did not consent to the search. When asked at the hearing whether he told the officers at the police department that he wanted to talk to his attorney, Defendant replied:
I didn't-I don't believe I specifically said I wanted to talk to my attorney. [Corporal] Price asked me if I would sign a consent form. I told him it wasn't my house and I said, you know, before I do much of any of that, probably ought to-you know, somebody ought to call my attorney, Gary Smith. That was the extent of it.
Corporal Price did not ask Defendant "any other questions about what had happened[.]"
Around 10:40 that same morning, Laclede County Sheriff's Investigator Robert Finley ("Detective Finley") interviewed Defendant at the sheriff's department. The interview was video recorded, and a DVD disc containing the recording was admitted into evidence at the suppression hearing as State's Exhibit 1. Detective Finley informed Defendant of the nature of the matter, read him his rights using a "Miranda card[,]" and, as each item was read, asked Defendant if he understood. Defendant acknowledged that he understood each item read to him by Detective Finley.
*496 The detective asked Defendant again whether Defendant understood his rights as they had been explained to him, and Defendant replied, "I think so. Seems simple enough."
Detective Finley asked if Defendant would talk with him, and Defendant replied: "Well, I might talk to you a little bit, I-I'm thinking, as serious as this is. You say I'm under arrest. I mean, I'm thinking maybe-and I know I can't afford an attorney. So, I'm thinking maybe I better get one. Something, you know at least ask." Detective Finley then told Defendant that the detective believed that Defendant had knowledge about the investigation. Defendant responded by saying "that he had a lot of knowledge about Atlanta Road." Detective Finley's interrogation of Defendant proceeded, and it "lasted approximately three hours and 19 minutes[.]"
The next morning, Sheriff was at the jail, and staff advised him that Defendant wanted to talk to Sheriff "about a matter that happened between [Defendant] and a DFS worker."[3] Sheriff told Defendant that they could talk after Sheriff finished something he was doing at the moment. About 20 to 25 minutes later, around 9:30 a.m., Sheriff went to the interview room where Defendant was located and told him to have a seat. Sheriff left to take a phone call, returned, and then interviewed Defendant. Sheriff's interview of Defendant was video recorded, and a DVD disc of the recording was admitted into evidence at the suppression hearing as State's Exhibit 2.
Exhibit 2 begins with Defendant walking into the interview room, and a voice is audible telling Defendant, "be with you in just a second." Sheriff entered the room approximately two-and-a-half minutes later and stated, "Okay. You wanting to talk to me, Matt?" Defendant replied, "Um," and Sheriff stated, "Okay, now, before you say anything, remember, you're still under-do you remember your rights that we read to you yesterday? So you still understand your rights and everything?" Defendant indicated that he understood his rights, and Sheriff said, "Alright, go ahead."
Defendant then complained about the way someone from "social services" ("the social services investigator") had treated him when bringing some papers to him at the jail. Defendant said he thought that other individuals, including Detective Finley, had been "professional[,]" but the social services investigator was not. Defendant said that he did not know if he wanted to file "this" and gestured toward a paper that he later said the social services investigator had given him. Defendant said that he would rather make his complaint "verbally[.]"
As Defendant finished describing his interaction with the social services investigator, the following exchange occurred:
Defendant: So, I don't know. I mean, [the social services investigator] was just very rude and vulgar, I thought.
Sheriff: Okay. Well-
Defendant: I understand the nature of my crime, I understand that. At the same time, I don't care, I'm never going to think that I shot [Victim 2]. I don't buy that, I don't know. I can't feature that. I mean, if I did, I have no-
Sheriff: Well, who, who, who do you think would have shot [Victim 2]?"
Defendant: That's the problem, I don't know.
Defendant went on to explain what someone else had said about the scene of the *497 crime, Sheriff interjected questions, and the pair "continued to speak.... for.... almost two hours[.]" During the interview, Defendant made incriminating statements regarding "his behavior and the events on Atlanta Road[.]"
Defendant was charged with two counts of first degree murder and two related counts of armed criminal action. See sections 565.020 and 571.015.1. Defendant's motion to suppress evidence targeted the statements Defendant made to Detective Finley and to Sheriff ("the suppression motion").[4] Concerning Defendant's statements to Detective Finley, Defendant claimed that he invoked his right to counsel while speaking with Corporal Price, "Defendant was not afforded the opportunity to speak to an attorney" before Detective Finley's interview, and Detective Finley "completely disregarded [Defendant's] request for counsel" that was made around 7 to 8 minutes after the video recording started.
As for Defendant's statements to Sheriff, Defendant claimed that Sheriff's reference to Defendant's rights at about the two to three minute mark of the video recording "did not constitute a sufficient notification to [Defendant] of his rights under [the Miranda decision] and its progeny." Defendant also alleged that "approximately 19 hours and 31 minutes" elapsed between the end of Detective Finley's interview and the start of Sheriff's interview such that "at the point [he] was being interrogated by [Sheriff], [Defendant] had not knowingly and intelligently waived his Miranda rights."
Following the hearing, the trial court entered a docket entry sustaining the suppression motion as to statements made by Defendant to Detective Finley on July 8, 2014 and to Sheriff on July 9, 2014. The docket entry ruling the suppression motion did not contain any findings of fact or conclusions of law.[5] This statutorily-authorized, interlocutory appeal timely followed. See section 547.200.4.
Analysis
Point 1-Defendant's Statements to Detective Finley
In support of Point 1's contention that Defendant's "anticipatory invocation with Corporal Price was ineffective[,]" and at most, "a limited invocation[,]" the State relies on the principle that "courts must look to the full context of a particular statement in order to determine whether a suspect invoked his rights or not." State v. O'Neal , 392 S.W.3d 556, 569 (Mo. App. W.D. 2013). Defendant responds that he "asserted his post-arrest right to counsel, including the specific name of his attorney[,] to Corporal Price[.]"
A Miranda - type warning is not required before an officer simply requests consent to search something. State v. Metz , 43 S.W.3d 374, 382-83 (Mo. App. W.D. 2001). For interrogation purposes, when an individual invokes his "Fifth Amendment right to counsel, the police must suspend all interrogation and may not reinitiate questioning unless counsel is present." Holman , 502 S.W.3d at 625. An *498 invocation of the right to counsel "must be sufficiently clear so that a reasonable police officer would understand that the suspect is invoking his or her right to have an attorney present during the interrogation." Id. (citing Davis v. United States , 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) ). In Holman , the "[d]efendant stated he would not sign anything without the presence of an attorney." Id. at 626. In that instance, "[t]he mere utterance of the magic word 'attorney' in response to a request to search [the defendant's] home was not a clear and unequivocal invocation of [the defendant's] Fifth Amendment right to counsel in all instances." Id.
Here, Defendant testified at the hearing that he did not believe he "specifically" told Corporal Price that he "wanted to talk to [his] attorney." Rather, Corporal Price was requesting consent to search a house and a vehicle, and Defendant said that he did not live in the house and "before [he did] much of any of that, probably ... somebody ought to call [his] attorney, Gary Smith. That was the extent of it." A reasonable police officer would not have understood Defendant's statement-that before he agreed to any search, someone should call his attorney-as an invocation of his Fifth Amendment right to counsel for purposes of interrogation. Cf. Holman , 502 S.W.3d at 627 (the defendant's strong statement that "he would not sign a consent to search his residence without an attorney" said nothing about invoking Miranda rights for purposes of interrogation). Thus, the fact that Detective Finley contacted Defendant to initiate an interrogation after Defendant had refused to grant Corporal Price's request for a consensual search did not constitute a violation of Defendant's Fifth Amendment right to counsel.
The next issue, then, is whether Defendant invoked his Fifth Amendment right to counsel during his interaction with Detective Finley. "[Q]uestioning must cease if the suspect asks for a lawyer[.]" Davis , 512 U.S. at 461, 114 S.Ct. 2350 ; see also Edwards v. Arizona , 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). However, "the suspect must unambiguously request counsel." Davis , 512 U.S. at 459, 114 S.Ct. 2350. After Defendant acknowledged understanding his rights, he told Detective Finley: "Well, I might talk to you a little bit, I-I'm thinking, as serious as this is. You say I'm under arrest. I mean, I'm thinking maybe-and I know I can't afford an attorney. So, I'm thinking maybe I better get one. Something, you know at least ask." The State insists that these words reflected that Defendant "was thinking that he maybe should get an attorney" and this "was not a clear and unequivocal invocation of the right to the assistance of counsel."
Defendant takes the opposite view, relying on State v. Gibson , 623 S.W.2d 93, 98 (Mo. App. W.D. 1981), as noting that a suspect's " 'reluctance or inability' " to obtain counsel does not necessarily waive " 'the right to counsel.' " Defendant did say that he could not afford an attorney, but instead of then requesting that he be provided with an attorney, he said, "So I'm thinking maybe I better get one [ (an attorney) ]. Something , you know at least ask. " (Emphasis added.) We agree with the State that Defendant's use of "maybe" was inadequate to compel Detective Finley to stop his interrogation at that point because officers are not required to cease questioning "if a suspect makes a statement that might be a request for an attorney[.]" Davis , 512 U.S. at 461, 462, 114 S.Ct. 2350 (Davis's statement " '[m]aybe I should talk to a lawyer' " held not to be a basis under the Fifth Amendment to suppress subsequent statements).
*499 A reasonable law enforcement officer could certainly have wondered if Defendant was intending to ask for a lawyer, and it might be "good police practice" for an officer conducting a custodial interrogation to have the suspect clarify whether or not he or she "actually wants an attorney[.]" Id. at 461-62, 114 S.Ct. 2350. But even if we assume, arguendo , that Defendant's statement could reasonably have been interpreted as an actual request for an attorney, the trial court erred in suppressing Defendant's statements to Detective Finley because such a request must be unambiguous. Davis , 512 U.S. at 459, 114 S.Ct. 2350. The governing legal principle is not "could a suspect's words be reasonably interpreted to invoke counsel?" Rather, it is whether the suspect's words were clear and unequivocal. See Holman , 502 S.W.3d at 625. Here, because a reasonable officer could have interpreted Defendant's words to mean that he was only considering whether he should ask for a lawyer, his words did not constitute a clear and unequivocal request for counsel.
Point 1 is granted, and the trial court's ruling suppressing Defendant's statements to Detective Finley is reversed.
Point 2-Defendant's Statements to Sheriff
The first portion of the State's claim in Point 2 is that the trial court erred in suppressing Defendant's statements made to Sheriff because "Defendant did not unequivocally assert his Fifth Amendment right to counsel[.]"[6] We agree.
Our Point-1 holding that Defendant had not invoked his right to counsel with either Corporal Price or Detective Finley moots the parties' dispute about whether Defendant waived a previously invoked right to counsel by reinitiating a conversation about the murders. Cf. State v. Benedict , 495 S.W.3d 185, 194-95 (Mo. App. E.D. 2016) (analyzing whether a suspect initiated further discussion following an invocation of the right to counsel and whether such reinitiation was an "intelligent waiver of the right that had been previously invoked").
Defendant's brief does not allege that his statements to Sheriff must be suppressed because Sheriff did not re-administer the complete warning set forth in Miranda , 384 U.S. at 444, 86 S.Ct. 1602. But the suppression motion included the claims that: (1) about 19 ½ hours elapsed after Detective Finley's interview; and (2) Sheriff's reference, at the beginning of the interview, to Defendant's rights "did not constitute a sufficient notification to [Defendant] of his rights under [the Miranda decision] and its progeny." As a result, we must consider whether the trial court may have suppressed Defendant's statements to Sheriff on this alternative ground. See Kinkead , 983 S.W.2d at 519.
"It [has] been repeatedly held that Miranda warnings need not be given each time an accused is questioned or simply because there is a time delay between the interrogation and when the warnings were read." State v. Carollo , 172 S.W.3d 872, 875 (Mo. App. S.D. 2005) (citing State v. Rodriguez , 877 S.W.2d 106, 110-11 (Mo. banc 1994) ; State v. Bailey , 714 S.W.2d 590, 593 (Mo. App. E.D. 1986) ; and State v. Woodward , 587 S.W.2d 287, 289 (Mo. App. E.D. 1979) ). " Miranda warnings are not so ephemeral that they evaporate between *500 questionings. Once received, and the constitutional rights they protect waived, the waiver remains in effect until undone by the person in custody." State v. Clemons , 946 S.W.2d 206, 220 (Mo. banc 1997).
Here, Defendant does not allege that something happened after Detective Finley's interview and before Defendant asked to speak with Sheriff (other than the passage of time) that would serve to void Defendant's prior acknowledged understanding of his Miranda rights. While Sheriff was not required to again advise Defendant of his Miranda rights, he did remind Defendant that his rights had been read to him the day before, and Sheriff confirmed that Defendant still understood those rights.
The trial court's ruling suppressing Defendant's statements to Sheriff is also reversed, and the trial court is directed to enter an order denying the suppression motion.
MARY W. SHEFFIELD, P.J.-CONCURS
GARY W. LYNCH, J.-CONCURS

All statutory references are to RSMo 2000.

See Miranda v. Arizona , 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

From our review of the record, we believe the reference is to a caseworker employed by what was commonly referred to at that time as the Missouri Division of Family Services.

Defendant also sought suppression of his statements to the social services investigator, but the trial court denied that part of the suppression motion.

The suppression motion identified specific portions of Defendant's contact with Corporal Price, Detective Finley, and Sheriff as being the source of the alleged constitutional violations at issue on appeal, and the docket entry did not specify any other basis for the trial court's ruling on the suppression motion. Therefore, we have not reviewed the additional hours of recorded conversation between Defendant and the officers contained in State's Exhibits 1 and 2.

Point 2 goes on to contend that "even if Defendant had unequivocally asserted his right to counsel, he reinitiated a conversation regarding the investigation in that he asked to speak with [Sheriff] and he volunteered information about the investigation before any questioning by [Sheriff]." Our ruling on the first portion of State's claim renders its alternative claim moot.