

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED108332 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | Pike County |
| vs. | ) | 19PI-CR00044-01 |
| | ) | |
| JEFFREY RANDALL LINDSAY, | ) | Honorable Patrick S. Flynn |
| | ) | |
| Respondent. | ) | Filed:  April 28, 2020 |

James M. Dowd, P.J., Gary M. Gaertner, Jr., J., and Robin Ransom, J.

## OPINION

### Introduction

The State of Missouri appeals from the trial court's order granting Respondent Lindsay's motion to suppress the evidence obtained as a result of a warrantless search of his vehicle, evidence which formed the basis for the State's charges against Lindsay of felony possession of over 35 grams of methamphetamine and felony intent to distribute.  We reverse because while the facts articulated by the arresting officer failed to justify a search of Lindsay's vehicle for illegal drugs, the facts articulated by the officer, that he was concerned for his personal safety, justified the officer's warrantless protective search for weapons inside Lindsay's vehicle in all the same areas of the vehicle where the drugs and drug-selling paraphernalia were found.

## Background

On the evening of December 19, 2018 around 10:30 p.m., Lindsay was driving his pick-up truck in Bowling Green, Missouri when Bowling Green police officer Samuel Zaerr noticed Lindsay's license plates were expired and stopped him. After Officer Zaerr approached the vehicle and made contact with Lindsay through the driver's side window, Lindsay gave Officer Zaerr his driver's license and admitted that his plates and his insurance were expired. Officer Zaerr returned to his patrol vehicle to "run his license." Lindsay remained in his vehicle.

After the report came back that Lindsay was classified as a "Caution 1" which Officer Zaerr understood to mean that Lindsay was known to be armed and dangerous, Officer Zaerr "started recalling all the clutter he had inside of his truck and actually on the bed of the truck" and the "safety hazard for [him] not being able to see what's inside the vehicle, if there's any weapons. . ." Officer Zaerr testified that while he did not see any contraband, weapons, or evidence of any illegal activity inside the vehicle, he did not feel safe in not being able to see what was actually there.

Then, Officer Zaerr approached Lindsay's vehicle a second time and asked him for consent to search it. Lindsay declined and, according to Officer Zaerr, he became agitated and impatient with the request to search the vehicle and the length of the stop. Officer Zaerr asked Lindsay to exit the vehicle and radioed for assistance to search the vehicle.

Officer Zaerr escorted Lindsay back to his patrol vehicle and did a pat-down search of Lindsay's person. He testified the pat-down search was for his safety in light of the Caution 1 report received from dispatch. Officer Zaerr found a utility knife in Lindsay's pocket. Also, during the search, Lindsay became angry and repeatedly turned around to face Officer Zaerr asking why he "was doing this," so Officer Zaerr placed Lindsay in restraints.

2

Then, Sergeant Hipes and the K-9 unit arrived on scene and the K-9 "positive alerted" to the driver's and passenger's side for some kind of controlled substance. Officer Zaerr then searched the vehicle and found in the "driver's side compartment" an empty pill bottle with a white powdery substance inside. He found a pipe with residue in the front center console and in the back seat on the driver's side, Officer Zaerr "noticed a black Pelican case sitting in plain site" inside of which were two bags containing a crystal-like substance and a black scale with what appeared to be powder residue on it. The crystal-like substance tested positive for methamphetamine. Officer Zaerr also found a large amount of cash on Lindsay's person and in the vehicle.

The trial court granted Lindsay's motion to suppress and explained its reasoning on the record. For the court, the issue was whether Officer Zaerr had articulated sufficient facts to demonstrate a reasonable suspicion that illegal drugs were present in Lindsay's vehicle. And since Officer Zaerr had not articulated any facts that supported a reasonable suspicion that illegal drugs were in Lindsay's vehicle, the search was not justified. The court emphasized that Officer Zaerr did not smell drugs, had no prior information that Lindsay was engaged in drug transactions, and did not suspect that Lindsay was under the influence of illegal drugs at the time such as having glassy eyes or slurred speech or drug-induced agitation. This appeal follows.

Standard of Review

"A trial court's ruling on a motion to suppress may be reversed only if it is clearly erroneous." *State v. Shaon*, 145 S.W.3d 499, 504 (Mo. App. W.D. 2004). When reviewing a trial court's ruling on a motion to suppress, the appellate court limits its review to determining whether there is substantial evidence to support the court's decision and deference is given to the trial court's factual findings and credibility determinations. *State v Whitaker*, 101 S.W.3d 332,

3

333 (Mo. App. E.D. 2003). "If the trial court's ruling 'is plausible in light of the record viewed in its entirety,' this court 'may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" *State v. Kovach*, 839 S.W.2d 303, 307 (Mo. App. S.D. 1992) (quoting *State v. Milliorn*, 794 S.W.2d 181, 183 (Mo. banc 1990)). Nevertheless, whether the Fourth Amendment was violated is a question of law that this Court reviews *de novo*. *State v. Holman*, 502 S.W.3d 621, 624 (Mo. banc 2016).

### The Fourth Amendment

The Fourth Amendment of the U.S. Constitution preserves the right of the people to be secure from unreasonable searches and seizures. *State v. Franklin*, 841 S.W.2d 639, 641 (Mo. banc 1992). A routine traffic stop based upon an officer's observation of a violation of state traffic laws is a reasonable seizure under the Fourth Amendment. *State v. Sund*, 215 S.W.3d 719, 723 (Mo. banc 2007) (citing *State v. Barks*, 128 S.W.3d 513, 516 (Mo. banc 2004)). "Miranda warnings are not necessary during questioning pursuant to a routine traffic stop because traffic stops are analogous to a '*Terry* stop.[1]'" *State v. Schroeder*, 330 S.W.3d 468, 473 (Mo. banc 2011) (citing *Berkemer v. McCarty*, 468 U.S. 420, 439-40 (1984)). "A reasonable investigation may include 'asking for the driver's license, requesting the driver to sit in the patrol car, and asking the driver about his destination and purpose.'" *Id.* at 473-74 (quoting *Barks*, 128 S.W.3d at 517).

---

[1] In its landmark decision in *Terry v. Ohio*, 392 U.S. 1, 30 (1968), the United States Supreme Court held that an officer may stop and briefly detain a person for questioning upon the officer's reasonable suspicion that the person may be connected with criminal activity. If the officer articulates a reasonable suspicion that the person is armed and dangerous, the officer may perform a limited search for weapons of the person. *Id.*

4

1.      *Fourth Amendment principles applicable to warrantless search of vehicle during routine traffic stop based on objectively reasonable suspicion the individual is involved in criminal activity.*

Once a traffic stop is complete, the law enforcement officer is required to allow the person to "proceed without further questioning unless specific, articulable facts created an objectively reasonable suspicion that the individual was involved in criminal activity." *Sund*, 215 S.W.3d at 723. The existence of reasonable suspicion is determined objectively. *State v. Pike*, 162 S.W.3d 464, 472 (Mo. banc 2005). The question is whether the facts available to the officer at that moment would "warrant a [person] of reasonable caution to believe that the action taken was appropriate[.]" *Id*. "Reasonable suspicion is a less stringent standard than probable cause" and "may be established with information that is different in amount or content, or that is less reliable, than the evidence required to establish probable cause." *Id*. at 473. "The quantity and quality of the information must be considered in the context of the 'totality of the circumstances'. . ." *Id*. "A suspicion is reasonable when the officer is 'able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *State v. Hawkins*, 137 S.W.3d 549, 557 (Mo. App. W.D. 2004) (quoting *Terry*, 392 U.S. at 21). Nervousness, evasive and furtive actions, and the officer's knowledge of the subject's recent relevant criminal conduct are generally permissible components of articulable suspicion. *Id.* at 558.

2.      *Fourth Amendment implications in warrantless search of vehicle during routine traffic stop based on officer's reasonable suspicion driver poses danger to officer.*

The United States Supreme Court has recognized that investigative detentions involving suspects in vehicles are especially fraught with danger to police officers. *Michigan v. Long*, 463

5

U.S. 1032, 1047 (1983). In *Pennsylvania v. Mimms*, 434 U.S. 106 (1977), the Court held that police may order persons out of an automobile during a stop for a traffic violation, and may frisk those persons for weapons if there is a reasonable belief that they may be armed and dangerous. The Court rested its decision in part on the "inordinate risk confronting an officer as he approaches a person seated in an automobile." *Id.* at 110.

In *Chimel v. California*, 395 U.S. 752 (1969), the Court addressed the limitations on police authority when conducting a search incident to a valid arrest. Relying on *Terry*, the Court held that when an arrest is made, it is reasonable for the arresting officer to search "the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Id.* at 763. The Court reasoned that "[a] gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested." *Id.* The Court later held, in *New York v. Belton*, 453 U.S. 454, 460 (1981), that "articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon. . .'" (quoting *Chimel*, 395 U.S. at 763). The Court also held that the police may examine the contents of any open or closed container found within the passenger compartment, "for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach." *Belton*, 453 U.S. at 460.

In *Long*, the Court observed that its past cases indicate that the protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger if he were permitted to reenter his vehicle, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the presence of weapons in the

6

area surrounding a suspect. 463 U.S. at 1049. These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. *Id.* (quoting *Terry*, 392 U.S. at 21). And in *Terry*, the Court observed that "the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." 392 U.S. at 27.

Our Supreme Court in *State v. Waldrup*, 331 S.W.3d 668, 675 (Mo. banc 2011), recognized that the holding in *Long* extended the *Terry* principles "to the search of the interior of the vehicle 'if the police officer possesses a reasonable belief. . .the suspect is dangerous and the suspect may gain immediate control of weapons.'" And if, while conducting a legitimate *Terry* search of the interior of the automobile, an officer should discover contraband other than weapons, he cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances. *State v. Preston*, 861 S.W.2d 627, 631 (Mo. App. E.D. 1993) (citing *Long*, 463 U.S. at 1050).

3.    *Our analysis.*

We begin our analysis by observing that the trial court found Officer Zaerr's testimony to be credible. Moreover, while we view Officer Zaerr's conduct and testimony through the lens of an objective and reasonable police officer, it bears mentioning that Officer Zaerr was a rookie officer with about two months of experience.

7

*a. The initial stop.*

Since Lindsay's plates were expired, Officer Zaerr's initial routine traffic stop was a "reasonable seizure under the Fourth Amendment." *Sund*, 215 S.W.3d at 723. At that point, Officer Zaerr had the authority to conduct a reasonable investigation which could properly include asking Lindsay to exit the vehicle, asking Lindsay to enter the officer's vehicle, asking for Lindsay's driver's license, registration, and proof of insurance, and questioning Lindsay on where he was coming from and where he was going. *See Schroeder*, 330 S.W.3d 468, 473-74. But Officer Zaerr chose to proceed less intrusively. He conversed with Lindsay at the driver's side window and then returned to his police vehicle to "run" Lindsay's driver's license while Lindsay remained in the vehicle.

At that point, the circumstances changed. *State v. Woods*, 284 S.W.3d 630, 638 (Mo. App. W.D. 2009) (officer was not limited to investigating traffic violations of driver). Officer Zaerr received the report from dispatch that Lindsay was classified as a Caution 1 which meant to Officer Zaerr that he was known to be armed and dangerous.[2] Officer Zaerr then added to that data point his testimony regarding the considerable clutter he had observed inside Lindsay's vehicle during his first encounter with Lindsay. Moreover, he testified that Lindsay was agitated and seemed to want Officer Zaerr to "rush through the stop." As a result, Officer Zaerr "did not feel safe in not being able to see what was actually inside the vehicle."

At this point of the stop, we find that the facts articulated by Officer Zaerr demonstrate that he had a reasonable belief that Lindsay may have posed a danger to him through access to a weapon from inside the vehicle. So, when Officer Zaerr made his second approach to the

---

[2] The only testimony in the record regarding the "Caution 1" report and its significance was from Officer Zaerr.

vehicle, he could have asked Lindsay to exit the vehicle to allow him to perform a warrantless sweep or search of Lindsay's vehicle for the officer's own protection in areas within the immediate reach of Lindsay including any containers that might contain a weapon. *See Belton*, 453 U.S. at 460 and *Chimel*, 395 U.S. at 763.

We further note that at this point in time, according to his testimony, Officer Zaerr had <u>only</u> expressed concern for his own personal safety and had made no mention that he had any concern or suspicion that Lindsay's vehicle might contain any illegal drugs or evidence of some other criminal activity.

   b. *Officer Zaerr's second approach to Lindsay's vehicle.*

Officer Zaerr then approached Lindsay's vehicle for the second time and asked Lindsay to consent to a search of the vehicle. Again, we believe that Officer Zaerr had already articulated sufficient facts that would have allowed him to perform a protective search of Lindsay and of the vehicle. Instead, however, when Lindsay declined to consent to the search, Officer Zaerr asked him to exit the vehicle and he performed a pat-down search which we also find to be appropriate. When Lindsay repeatedly turned to face Officer Zaerr during the pat-down search and angrily questioned what he was doing and why, Officer Zaerr put wrist restraints on Lindsay. We find all this to be appropriate and reasonable given Officer Zaerr's concerns for his safety and especially since he was alone.

   c. *Officer Zaerr's call for back-up.*

The stop took another turn when Lindsay declined to consent to the search and Officer Zaerr called for "assistance from Sergeant Hipes, who had the K-9 on duty that day." Unfortunately, it is unclear from the transcript whether Officer Zaerr specifically requested assistance from the K-9 because he suspected Lindsay's vehicle contained illegal drugs or

9

whether Officer Zaerr simply called for back-up and the back-up happened to include the K-9 unit. We note this because Officer Zaerr had not expressed any suspicion whatsoever regarding illegal drugs in Lindsay's vehicle or on his person for which Officer Zaerr might have specifically requested a drug-sniffing K-9 unit.

Regardless, Sergeant Hipes and the K-9 arrived and after acclimating the K-9 to the scene, Sergeant Hipes conducted an exterior sweep of the vehicle and the K-9 alerted for illegal drugs inside the passenger compartment of Lindsay's vehicle. Officer Zaerr then searched the passenger compartment and found the drugs and drug-selling paraphernalia at issue.

 d.  *The trial court's order.*

We now turn to the trial court's decision to suppress this evidence because the search was unconstitutional in that Officer Zaerr failed to articulate sufficient facts to justify a reasonable suspicion that Lindsay's vehicle contained illegal drugs. In light of the above-referenced authorities, *e.g., Sund*, 215 S.W.3d at 723, we agree with the trial court because Officer Zaerr did not articulate <u>any</u> facts whatsoever that he suspected Lindsay's vehicle to contain illegal drugs or illegal drug activity. And if the record had stopped there, so would we.

But the trial court's narrow focus ignored the Fourth Amendment implications of Officer Zaerr's testimony that contained "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and may gain immediate control of weapons. *Long*, 463 U.S. at 1049 (quoting *Terry*, 392 U.S. at 21). Specifically, Zaerr testified he was concerned for his safety due to Lindsay's agitation, anger, and impatience with the stop, the clutter throughout his vehicle, and that he was known to be armed and dangerous.

10

On this record and in light of the U.S. Supreme Court dictates from *Terry* and *Long*, Officer Lindsay's protective search for weapons that uncovered the methamphetamine and the drug-selling tools readily passes Fourth Amendment muster under our *de novo* review. *Holman*, 502 S.W.3d at 624.

Our only criticism of the trial court here is that it focused solely on whether the search was justified to look for illegal drugs while ignoring Officer Zaerr's testimony that justified the search from a constitutional standpoint for the safety of the officer. Likewise, we are unpersuaded that the involvement of the K-9 somehow stripped Officer Zaerr's justified search for weapons of its constitutional underpinnings. The areas of the passenger compartment of the vehicle that Officer Zaerr testified he searched and found the evidence in question, would encompass the areas he was allowed to search as part of a protective search for weapons. *See, e.g., Belton*, 453 U.S. at 460 and *Chimel*, 395 U.S. at 763.

Based on the foregoing, we find that Officer Zaerr discovered the drugs and drug-selling paraphernalia pursuant to a legitimate *Terry* search, and therefore, Lindsay's motion to suppress should have been denied.

### Conclusion

For the reasons set forth above, we reverse the trial court's order suppressing the evidence and remand for further proceedings.

_____
James M. Dowd, Presiding Judge

Gary M. Gaertner, Jr., J., and
Robin Ransom, J. concur.

11